## JOHNSON vs. FARWELL, & als.

The time of the actual making of a writ, with an intention of service, is the time when an action is "commenced and sued" within the meaning of the statute of limitations ; (1821 ch. 62,) for it is the acquiesence of the plaintiff for six years, that bars him, whether it be known to the defendant or not.

The date of a writ is not conclusive evidence of the time when it was sued out, so as to affect a plea of the statute of limitations.

In an action of trespass for demolishing certain dwelling houses, it was held incompetent for the defendant to prove, in mitigation of damages, that they were occupied as houses of ill fame.

THIS was an action of trespass for demolishing and destroying five dwelling houses, the property of the plaintiff ; to which the defendants pleaded the general issue, and the statute of limitations. To the latter plea the plaintiff replied that the action was commenced and sued within six years after the trespass was done ; on which issue was joined.

The trespass was alleged to have been done *Aug.* 20, 1824. The writ bore date *Aug.* 9, 1830, on which day the officer returned an attachment of the defendants' property ; but no summons was delivered till *Sept.* 21. The defendants hereupon contended that the action was not commenced within the meaning of the statute, till the writ was actually served ; and that therefore it was barred by the previous lapse of six years. But the Chief Justice, before whom the cause was tried, ruled that suing out the writ within six years was a sufficient commencement of the action ; and instructed the jury that the only question, under the second issue, was whether the writ was actually sued out within six years after the trespass was committed.

The defendants offered to prove, in mitigation of damages, that the dwelling houses demolished were at that time houses of ill fame, and on that account were incapable of being profitably rented for any lawful purpose ; and that they were on that account so worthless that they could not be let to persons of honest reputation. But this evidence the Chief Justice excluded ; observing that the

Court had no authority to presume that future tenants would be violators of the law ; or that the houses would have been leased for any unlawful purposes.

To these decisions of the Chief Justice the defendants took exceptions, a verdict having been returned for the plaintiff.

*Fessenden* and *Neal*, in support of the exceptions, argued from the difference of phraseology in the seventh and eighth sections of the statute of limitations ; the former speaking of actions of trespass " commenced and sued," and the latter describing other actions " actually declared upon in a proper writ ; "—that a difference was intended by the legislature between the actions mentioned in the two sections ; and that in the former case personal notice to the defendant was necessary to the commencement of the suit ; or at least there should be a complete service of the writ, in some mode prescribed by law. *Cook v. Darling,* 2 *Pick.* 605. If the mere purchase of a writ is to be " deemed and taken to be a due commencement of the action" in all cases, then the eighth section of the statute must be held wholly superfluous ; which is contrary to the established rules of statutory exposition.

The greatest mischiefs also would result from the adoption of any rule which would put it in the plaintiff's power to save the statute by his own secret act, while the defendant, being lulled into security by the lapse of time, might lose the evidence necessary for his protection. It is imposing no hardship on an honest and vigilant plaintiff, to require him to give notice, within six years, that his claim will be enforced. To show that the principles of the English practice were consonant with those now contended for, they cited, 1 *Saund.* 63 ; 7 *Mod.* 5 ; *Hollister v. Coulson,* 1 *Stra.* 550 ; *Willes,* 255 ; *Leader v. Moxon,* 2 *H. Bl.* 927 ; *Harris v, Woolford,* 6 *D. & E.* 617 ; 2 *Ld. Raym.* 883.

To the point of damages, they contended that the evidence offered was admissable ; its tendency being to show that the buildings, having been used for base purposes, had acquired so bad a character that persons of honest fame would not occupy them ; and that

consequently their value was very small, except for purposes forbidden by law. 4 *Stark. Ev.* 1460 ; *Cowp.* 511 ; *Bull. N. P.* 27.

*Longfellow*, for the plaintiff.

PARRIS J. delivered the opinion of the Court.

By the seventh section of the *Stat.* 1821, *ch.* 62, it is provided that all actions of trespass, &c. shall be commenced and sued within six years next after the cause of such action ;—and we are called upon to decide whether this action was so commenced.

The statute does not declare what shall be deemed the commencement of such an action ; but in the 8th section it is provided that any action of the case or of debt, grounded upon any lending or contract, &c. which shall be actually declared upon in a proper writ, returnable according to law, purchased therefor, within the term of six years next after the cause of such action accrued, shall be deemed and taken to be duly commenced and sued within the meaning of this act.—It has been ingeniously argued that inasmuch as the actual suing out the writ is, by statute, the commencement of the suit, in certain actions mentioned in the 8th section, the various kinds of actions mentioned in the 7th section, are not considered as thus commenced ; the peculiar phraseology in the 8th section, defining the commencement of the suit, being omitted in the 7th section, which provides for the limitation of actions of trespass. The cause of this apparent inconsistency of the two sections may, perhaps, be explained by a reference to the statutes of limitations of Massachusetts, from which these sections were exactly copied ; the 7th from an act passed in 1787, and the 8th from the act of 1794.

But from whatever cause it may have arisen, inasmuch as what shall be deemed the commencement of the action under the 7th section is not defined, we must construe these words, " commenced and sued" as we should any others, by applying to them the common law definition, when not defined by statute. We know of no other guide or safe rule of construction.

At what time then, is an action commenced and sued ? The defendants' counsel have referred to the practice of the King's

Bench and Common Pleas, in England, and cited sundry cases to show that the suit is not commenced until the writ is served and returned.

Suits are commenced in this State by original writs issuing from the office of the clerk of the court to which they are made returnable. The declaration is a necessary part of the writ, essential to its validity, and without which it is void. As no amendments are allowed which are inconsistent with the nature of the count or counts originally inserted, or for a different cause of action, the writ discloses to the defendant the whole subject matter to which he is called to answer.

But this course of practice differs so essentially from that of the English practice, that sometimes similar expressions convey meanings entirely different, and the same principles are inapplicable to the same nominal stage of the proceedings. Thus in the King's Bench the writ issues merely to bring the defendant into court, and not at the same time to apprise him of the cause of action. The cause of action may not even exist until the filing of the bill, and then, for the first time it is technically set forth to the defendant.

For some purposes an action in the King's Bench may not be considered as commenced until after the date of the writ and the service, and even the appearance of the defendant in court; inasmuch as the cause of action may neither exist or be set forth till then; but for most purposes an action is considered as commenced at the date of the writ. *Johnson v. Smith, 2 Burr.* 950. In *Bronson v. Earl,* 17 *Johns.* 65, it is said, that it is the intention and act combined, which in fact constitutes the commencement of the suit. Because a writ filled up with no intention of service is altogether inoperative, as it may be filled up before the cause of action commences, or be antedated. The presumption is that the date of the writ is the true time when the action is brought; but this presumption may always be rebutted and the true time settled by actual proof of the fact. The date is not conclusive, and if the writ is antedated, the defendant will be allowed to show the time when it was actually issued. 6 *Com. Dig. Temps, G.* 6. *Ballantine on Limitations,* 119, 120, 122.

The phraseology of the *Stat. of* 21, *James* 1, being the English statute of limitations, is the same as ours, viz. actions shall be commenced and sued within certain periods ; and the form of pleading under that statute refers to the suing out and not to the service of the writ, the former and not the latter being considered as the commencement of the action. So in Massachusetts the action is considered as commenced at suing out of the writ. *Ford v. Phillips,* 1 *Pick.* 202. So in *New York,* it is not necessary to show that the writ has been returned, nor even that it was actually delivered to the sheriff, but it is sufficient if it appear that the writ was made out and sent to the sheriff or his deputy by mail or otherwise, with an absolute and *bona fide* intention of having it served. *Burdick v. Green,* 18 *Johns.* 14. Suing out the writ with a view to service is an act of legal diligence within the time of limitation. It shows that the party has not slumbered the period prescribed to bar his rights. *Ballant.* 121.

It is contended that the action is not commenced and sued within the meaning of the statute, so as to avoid the limitation, unless such service is actually made on the defendant as will give him notice of the subject matter of the plaintiff's demand, thereby making the effect or avoidance of the limitation to depend upon the defendant's knowledge of the plaintiff's intention to enforce his demand. But Lord *Mansfield* held that the statute did not bar unless the plaintiff had acquiesced six years, without reference to the defendant's knowledge of such acquiescence, and he adds that he who sued out a *latitat,* (which never includes the declaration) to bring the defendant into custody, did not acquiesce within the true meaning of the act. *Ballant. on limitations,* 121. Chief Justice *Kent* held that the action is commenced at the time of suing out of the writ, and that the good sense as well as truth on the subject concurred that the writ issues when it is delivered to the sheriff or his deputy, or sent to either of them with a *bona fide* intention to be served upon the defendant.

In the case at bar, the facts show such intention most conclusively. The writ had not only been sued out and placed in the hands of the officer before the limitation took effect, but had been partial-

ly executed, the officer having made a special attachment by virtue of it on the fifth of *August*, a number of days previous to the time when the statute of limitations could have taken effect. We are clear that the action was " commenced and sued" within the meaning of the statute on the day of the attachment, which, in this case, was the day of the date of the writ.

The next question is as to the admissibility of the testimony offered by the defendants to prove that the houses described in the declaration were houses of ill fame, at the time of their demolition ; and that, on this account, they were so worthless that they could not be rented to persons of honest reputation. The only application which it is pretended such testimony could possibly have, is upon the question of damages ; and upon this question the burden of proof was upon the plaintiff. As the jury found the defendants guilty, the plaintiff must have proved that the houses demolished were his property, and that they were destroyed by the defendants. Having done so, he was entitled, at least, to the full value of the property destroyed as a compensation for the injury he had received, and he must have established the amount of such injury by competent proof. That he is presumed to have done, as the jury awarded him a sum in damages. We think with the Judge who presided at the trial, that the court had no authority to presume that future tenants would be violators of the law, or that the houses would have been leased or used for any unlawful purpose, if they had not been destroyed.

In estimating the damages the jury would properly inquire into the value of the property destroyed ; and in ascertaining that value, one correct rule would be what it would be worth to a person who wished to purchase property of that description. So they might arrive at the probable value by ascertaining what it would rent for ; and in either case the plaintiff must prove such facts as would be necessary to enable the jury to find the value. But that, in consequence of the property having been occupied by tenants of any particular character, it had thereby become of more or less intrinsic value, as the moral character of the tenant ranged higher or lower,

would be a rule too uncertain and difficult in its application to be relied upon.

Besides, it was admitted at the argument that the buildings destroyed were not leased by the plaintiff for improper purposes ; neither does it appear that he had knowledge of any improper use of them. No case can be found in the books where the value of property is to be estimated by the reputation of its occupant. What was the intrinsic worth of the buildings for honest occupation, by tenants of such employment and character as would be likely to hire houses of the like kind, was the proper inquiry for the jury, and we do not perceive that they were deprived of any testimony offered, having a tendency to establish that fact.

> *The exceptions are overruled, and*
> *judgment is to be entered on the verdict.*