**Joseph B. DAVIDSON,
Defendant-Appellant,**

v.

**Thomas F. MATHIS, Jr., and Diana M.
Mathis, Plaintiffs-Appellees.**

No. 1–1178A321.

Court of Appeals of Indiana,
First District.

May 21, 1979.

---

John R. Cromer, Hammond, Cromer, Jackson & Borgmann, Indianapolis, for defendant-appellant.

William R. Nichols, Parr, Richey, Obremskey & Morton, Lebanon, for plaintiffs-appellees.

ROBERTSON, Judge.

Defendant-appellant Joseph B. Davidson (Davidson) appeals a judgment for plaintiffs-appellees Thomas F. Mathis, Jr., and Diana M. Mathis (Mathis) on Mathis's complaint for permanent injunction arising from a dispute over respective rights of riparian landowners.

Following a trial, viewing of the premises by the trial court, and the filing of post-trial briefs, the trial court entered judgment that Davidson be "permanently restrained from directly or indirectly dumping, leveling or bulldozing dirt, debris, trash or other matter into or in any way interfering with the natural drainage ravine from [Mathis's] property." In alleging that the verdict and decision of the trial court is not supported by sufficient evidence and is contrary to law, Davidson contends that there was not "any sort of drainage or 'waterway'" running across his land, and that insofar as the "'waterway'" created was "manmade" due to Mathis negligence, he had a "right to abate the flow of water" by blocking up the drainage. However, we disagree, conclude the evidence sufficiently supports a determination that the "ravine" (to use the trial court's description for lack of a more descriptive term) at issue can be considered a watercourse for purposes of legal remedy, and affirm the court below.

Under Indiana law, once it is established that a flow of water constitutes a "watercourse,"[1] then it is clear that a lower landowner cannot obstruct the flow of water to the upper landowner's detriment. *See Guynn v. Wabash Water & Light Co.*, (1914)

---

1. The Appellate Court in *Lowe v. Loge Realty Co.*, (1966) 138 Ind.App. 434, 436, 214 N.E.2d 400, 402, wrote:

    We understand a natural *watercourse* to be established when surface water begins to flow in a definite direction and there is a regular channel formed with well defined banks and bottom and water flows therein, not necessarily continually but from time immemorial and for a substantial period of each year. [Our emphasis.]

    In *Capes v. Barger*, (1953) 123 Ind.App. 212, 214–15, 109 N.E.2d 725, 726, the court defined *surface water*:

    Water from falling rains or melting snows which is diffused over the surface of the ground or which temporarily flows upon or over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channel, is surface water.

    Or, as stated otherwise by this court, "It is well settled that water running over land outside of and apart from any natural and artificial water course is surface water." *Cloverleaf Farms, Inc. v. Suratt*, (1976) Ind.App., 349 N.E.2d 731, 732.

    *Cf.* IC 13–2–1–4(1) and (4) ("relative to water resource projects and the development and improvement of water resources of any nature in the state . . . .").

181 Ind. 486, 104 N.E. 849; *Lowe v. Loge Realty Co.*, (1966) 138 Ind.App. 434, 214 N.E.2d 400. The general rule relating to watercourses has been stated as:

Every riparian owner is entitled to have the watercourse continue to flow through or along his lands in its accustomed channel and natural volume, without any injurious obstruction or detention of the waters by other owners, except as may be occasioned by the reasonable use of such water by other riparian owners.

29 I.L.E. *Waters* § 25 (1960) (footnotes omitted). Owners of lower land, moreover, may not dam a natural watercourse to prevent water therein from entering upon the lower land, and the removal of such an obstruction may be enforced by injunction and the injured landowner may recover resulting damages. *See Capes v. Barger*, (1953) 123 Ind.App. 212, 214, 109 N.E.2d 725, 726. Lower landowners, however, have a legal right to dam against surface water draining off upper landowners' land and are not responsible for damages resulting from the accumulation of water above the obstruction. *Id.*

In the present case, of course, Mathis submits that the flow of water is a "watercourse" and Davidson argues that the flow is mere "surface water." As we view same as an issue of fact (*see Capes, supra*), and the trial court found for Mathis, we will not reverse if there is evidence of probative value to support the finding. In addition, we note that our Supreme Court recently had occasion to reiterate the standard of review applicable to cases such as the present:

It is fundamental that in reviewing actions of a trial court, an appellate court can neither weigh the evidence nor determine the credibility of witnesses. *B & T Distributors, Inc. v. Riehle*, (1977) Ind., 366 N.E.2d 178, 180. On appeal, this court looks only to the evidence and reasonable inferences therefrom which tend to support the finding of the trial court.

*Gariup v. Stern*, (1970), 254 Ind. 563, 261 N.E.2d 578. It is only where the evidence leads to but one conclusion and the trial court has reached the opposite result that the judgment will be disturbed as being contrary to law. *Palmer v. Decker*, (1970), 253 Ind. 593, 255 N.E.2d 797. *Bureau of Motor Vehicles v. Pentecostal House of Prayer, Inc.*, (1978) Ind., 380 N.E.2d 1225, 1228.

The facts most favorable to the judgment show that Mathis (upper landowner) purchased Boone County land upon which a mobile home park was already in operation. Crossing both the Mathis property and property of the lower landowner Davidson is a natural drainage ravine of longstanding and which comes off Eagle Creek. In an attempt to alleviate septic tank drainage problems at the park, Mathis installed an approved sewage treatment plant at the upper end of the ravine. Plant effluent was discharged into the ravine in accordance with governmental requirements. Davidson subsequently dumped dirt, trash, and other debris in the ravine, thereby preventing water flow, creating a stagnate "ponding" effect, and threatening effective operation of the Mathis treatment facility.

A survey of the testimony in the record further reveals that Mathis called as an expert witness one Dulaney, an experienced civil engineer, who testified that he had occasions to examine water channels; he had inspected the disputed premises; it appeared to him that the watercourse had "[d]efined banks to the top and also a definite bottom"; he had examined the U.S. Department of the Interior Geological Survey map of the area (which was introduced as an exhibit and referred to in his testimony), and opined that "I think it can clearly be defined as a natural watercourse." [3]

One Overholzer, the Boone County Surveyer, also testified that he was acquainted with and had visited the area, observed well

---

**3.** Dulaney stated that "[a] natural watercourse is a natural geographical path that has a defined bottom and channel that directs a flow of water from upstream properties that doesn't necessarily, would not necessarily, have to run continually. But is operational for an upstream watershed."

defined banks and bottom, and observed water moving through—to use Mathis's description—the "channel." Overholzer also gave a description of what he understood the term "natural watercourse" to mean (one consistent with the Delaney definition) and answered "yes" to whether the formation he observed on the Mathis property would be described by his definition of "natural watercourse."

Another witness called by Mathis, one Meyers, testified that he was a former owner of the Mathis property and that there existed during his ownership what had been referred to during the trial as a channel or natural watercourse. He stated that the channel appeared to be naturally made, had natural banks and a bottom, and in response to a question as to whether water from time to time ran through it, stated, "Oh, Yes. Hard rains, there was a lot of water that went through it." He also stated that he had been out to the property about a month prior to the proceedings and that, with the exception of the disposal, it was the same watercourse as when he owned the property.

Finally, appellee Thomas Mathis's testimony was to the effect that the drain or channel at issue was on the property when he took it over in the fall of 1972; he further stated that there was a recognizable bottom and approximately ten feet high banks with trees in it. Mathis also said that he had seen water there "most of the year," and he had "never seen it when it was dry."

With deference to the fact-finding trial court and its office of judging the credibility of witnesses and weighing the evidence, we are of the opinion that the aforementioned evidence amply supports the trial court's judgment in favor of Mathis. The trial court's judgment is, therefore, affirmed.

Affirmed.

LOWDERMILK, P. J., and LYBROOK, J., concur.