Robert W. GASWAY,
Defendant–Appellant,

v.

Charles W. LALEN and Wilma Darlene
Lalen, Plaintiffs–Appellees.

No. 67A01–8711–CV–298.

Court of Appeals of Indiana,
First District.

Aug. 10, 1988.

Rehearing Denied Sept. 19, 1988.

William G. Brown, Brazil, for defendant-appellant.

Mark D. Hassler, Frey, Hunt, Hassler & Lorenz, Terre Haute, for plaintiffs-appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Robert W. Gasway (Gasway), appeals an adverse judgment rendered by the Putnam Circuit Court in favor of plaintiff-appellees, Charles W. Lalen and Wilma D. Lalen (the Lalens), on their suit for damages to their real property caused by water.

We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

The Lalens are the owners of a residential lot located near Brazil, Indiana. The lot fronts on South Waterworks Road, a north-south thoroughfare, and faces west. Gasway owns a tract of land immediately north of the Lalens' lot, the southern boundary abutting the northern boundary of the Lalens' property. Gasway's property is also bounded on the west by Waterworks Road and is bordered to the north by U.S. Highway 40, an east-west thoroughfare. A culvert, approximately 12 feet deep, has been constructed under U.S. 40 on the eastern portion of Gasway's property. In addition, there exists a series of culverts constructed under Waterworks Road. Three of these culverts are constructed along the southern half of the western boundary of the Lalens' lot. The elevation of the Lalens' property is higher than that of Gasway's, and Gasway's property declines slightly from its southern to northern border. Surface water flows from the west, under Waterworks Road, east, and south onto the Lalens' property and drains in a northerly direction along the eastern portion of the property, across Gasway's land, and into and through the culvert under U.S. 40 further north to a water collection pond.

At sometime prior to 1986 Gasway commenced a filling and leveling operation along the entire length of the southern boundary of his property. The leveling operation continued for several years. In late June or early July of 1986, Gasway obstructed the northerly flow of water draining naturally along the eastern portion of the Lalens' lot onto and across his property. As a result of the obstruction, water began to accumulate on the Lalens' property, and within a few days the majority of the property was flooded by water of various depths. Water also came to within one foot of the back of the residence and flooded the basement to a height of three or four feet. The flooding continued up to the latter part of May of 1987, at which time Gasway agreed to construct a temporary ditch to run to a second waterway located to the east. The ditch, although it alleviated the flooding problem, did not remove it. Water continued to stand along the northern boundary of the Lalens' property and the basement remained flooded to a depth of one foot. The Lalens requested but Gasway refused to remove the obstruction blocking the natural flow of water.

The Lalens filed suit against Gasway, seeking damages and injunctive relief. Following a bench trial, the trial court issued a judgment in favor of the Lalens. In

its finding of fact and conclusions of law, the trial court found that there existed a natural watercourse flowing in a northerly course along the eastern portion of the Lalens' property and across Gasway's property which Gasway had improperly blocked. In addition, the trial court found that the Lalens acquired an easement by prescription for drainage across Gasway's land. Accordingly, the trial court enjoined Gasway to remove the obstruction from the watercourse and drainage easement and permanently enjoined him from constructing or maintaining any similar obstruction in the future. The Lalens were also awarded $14,500 for damage to their property and residence, and the sum of $150 per month until the obstruction was removed for the loss of the use and enjoyment of their property. Gasway subsequently instituted this appeal.

## ISSUES

This appeal presents the following issues:

I. Whether the trial court erred in determining that a natural watercourse existed across the eastern portion of the Lalens' property.

II. Whether the trial court erred in determining that Gasway obstructed the flow of the watercourse.

III. Whether the trial court erred in determining that the Lalens acquired an easement by prescription for drainage across Gasway's property.

IV. Whether the trial court erred in assessing damages.

V. Whether the trial court erred in granting injunctive relief.

## DISCUSSION AND DECISION

Gasway claims that the trial court's finding that there existed a natural watercourse flowing along the eastern portion of the Lalens' property in a northerly direction across Gasway's land was contrary to both the evidence and the law. Before addressing this contention, we remind Gasway of our standard of appellate review. As a reviewing court, our responsibility is not to consider the credibility of the witnesses or reweigh the evidence. Rather, we focus upon the evidence most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. Only if the evidence is without conflict and leads to but one conclusion other than that reached, shall we find the trial court's decision contrary to law. *Indiana & Michigan Elec. Co. v. Terre Haute Industries, Inc.* (1987), Ind.App., 507 N.E.2d 588; *Wells v. Auberry* (1985), Ind.App., 476 N.E.2d 869. We will not disturb the trial court's findings unless the record is devoid of facts or inferences supporting the findings. *Craig v. ERA Mark Five Realtors* (1987), Ind. App., 509 N.E.2d 1144.

ISSUE I: *Natural Watercourse*

■ Surface water is defined as water which is diffused over the natural slope of the ground, not following a defined course or channel. *Taylor v. Fickas* (1878), 64 Ind. 167; *Birdwell v. Moore* (1982), Ind. App., 439 N.E.2d 718. The common enemy doctrine states that surface water is the common enemy of both upper and lower tenants. *Argeylan v. Haviland* (1982), Ind., 435 N.E.2d 973. Each tenant may protect himself from the flow of surface water as best he can, including walling it out, walling it in, and diverting or accelerating its flow. *Id.; Thompson v. Dyar* (1955), 126 Ind.App. 70, 130 N.E.2d 52.

■ Water flowing in a defined channel or watercourse is not surface water and the common enemy doctrine is inapplicable. The law pertaining to natural watercourses prohibits a lower landowner from blocking or obstructing the natural flow of water through a watercourse. *Argeylan, supra; Birdwell, supra; Lowe v. Loge Realty Co.* (1966), 138 Ind.App. 434, 214 N.E.2d 400. A natural watercourse is defined as a course or channel consisting of well defined banks and a bottom through which water flows in a definite direction for a substantial period each year. *Taylor, supra; Birdwell; supra; Walley v. Wiley* (1914), 56 Ind.App. 171, 104 N.E. 318. The size of the watercourse is immaterial as is the necessity of a constant water flow. *Gwinn*

v. *Myers* (1955), 234 Ind. 560, 129 N.E.2d 225; *Mitchell v. Bain* (1895), 142 Ind. 605, 42 N.E. 230. It is sufficient that water from heavy rains is regularly discharged through a well defined channel in order to constitute a natural watercourse. *Vandalia R. Co. v. Yeager* (1915), 60 Ind.App. 118, 110 N.E. 230.

In the present case the evidence established the presence of a natural watercourse. A neighbor, who had lived across the street from the property in question, testified as to the existence of a natural waterway flowing in a northerly direction across the eastern portion of the Lalens' property and continuing along Gasway's property into the culvert under U.S. 40. He stated that a watercourse had existed in that location for over 40 years and diagramed the specific course of its route upon a map of the parties' real estate introduced at trial. He testified further that the watercourse had recognizable banks and a bottom and water flowed in it after it rained. This testimony was substantiated by another neighbor who had been familiar with the area since 1973. Finally, both Mr. and Mrs. Lalen testified that a watercourse had existed across the eastern portion of the property since they purchased it in 1978 and that water had flowed in it at regular intervals. In light of the standard of review articulated above, we conclude that the trial court's decision was supported by sufficient evidence and was not contrary to law.

**ISSUE II:** *Obstruction*

Gasway next contends that the trial court erred in determining that he blocked the watercourse in the spring of 1986. Gasway's entire argument on this issue consists of one sentence and is as follows:

The evidence was uncontradicted that Gasway, by 1980, had raised the level of his property which allegedly constituted the waterway above that of Lalens, and for that reason, the court finding that in the spring or summer of 1986, Gasway blocked the waterway was erroneous and contrary to the evidence.

*Appellant's Brief* at 44.

Gasway's assertion that the evidence relevant to this issue is uncontradicted is without merit. Presumably Gasway is referring to his own testimony wherein he stated that by 1980 he had constructed a roadway across the watercourse which would have blocked the flow of water through it. The weight of the testimony, however, reveals that the natural flow of the watercourse was not obstructed until the spring of 1986.

Mr. Lalen testified that he never noticed a road being constructed near the watercourse. He testified further that his property had never flooded prior to the spring of 1986. There was also testimony that Gasway commenced his leveling and filling operation in the spring of 1986 and the Lalens' property became flooded within a short time thereafter. In light of this evidence, it was proper for the trial court to infer that Gasway's leveling operation obstructed the watercourse in the spring of 1986, and the trial court did not err in so finding.

**ISSUE III:** *Prescriptive Easement*

In addition to finding the existence of a natural watercourse, the trial court also found that the Lalens had obtained an easement by prescription for drainage. Gasway first maintains that the trial court erred in finding that both a prescriptive easement and a natural watercourse existed. He fails to demonstrate, however, how both findings are an irreconcilable conflict in the result rendered. In addition, Gasway asserts that the trial court's finding on this issue is both contrary to the law and the evidence. Because either theory will support the result, our resolution of Issue I makes further consideration of the issue moot.

**ISSUE IV:** *Monetary Damages*

Gasway next contends that the trial court erred in awarding damages. In its order the trial court awarded the Lalens $14,500. Of this amount, $9,500 was awarded for the cost of repairing the residence, including the foundation, structure,

and septic and electrical systems, and $5,000 was awarded for the permanent reduction in the value of the real estate resulting from the notoriety and publicity caused by the flooding. In addition, the trial court awarded the Lalens $150 per month, the reasonable rental value of the property prior to the water damage, from July 15, 1986, to the date the obstruction is removed. Gasway attacks each of the amounts as being improper and contrary to the evidence.

■ The computation of damages is strictly a matter within the trial court's discretion. *Smith v. Glesing* (1969), 145 Ind.App. 11, 248 N.E.2d 366. No degree of mathematical certainty is required in awarding damages as long as the amount awarded is supported by evidence in the record; however, an award may not be based upon mere conjecture, speculation, or guesswork. *Ashland Pipeline v. Indiana Bell Telephone Co.* (1987), Ind.App., 505 N.E.2d 483. In property damage actions, the appropriate measure of damages is the difference between the fair market value of the property prior to and after the injury where the injury is permanent. *Hann v. State* (1983), Ind.App., 447 N.E.2d 1144; *Bottoms v. B & M Coal Corp.* (1980), Ind. App., 405 N.E.2d 82. To support an award of compensatory damages, facts must exist and be shown by the evidence which afford a legal basis for measuring the plaintiff's loss. To that end the damages must be referenced to some fairly definitive standard, such as market value, established experience, or direct inference from known circumstances. *Indiana University v. Indiana Bonding & Surety Co.* (1981), Ind.App., 416 N.E.2d 1275.

■ At trial a real estate appraiser testified that due to the publicity and notoriety created by the flooding a permanent stigma was associated with the residence which would render it impossible to sell in the future. He testified further that prior to the flooding the fair market value of the property and residence was $19,500. He estimated its current fair market value to be $3,225, a reduction in fair market value of $16,275. In addition, there was testimony from the owner of a construction company specializing in foundation, septic system, and sewer work. He stated that it had been his experience that standing water on top of a septic system would cause the system to clog and not function properly. He testified further that water must have caused holes and cracks in the foundation allowing water to seep in and accumulate in the basement. He estimated that the cost of replacing the septic system would be $1,800 and the cost of repairing the foundation would be $2,300. There was also testimony that walls within the home were damaged and would cost $2,400 to repair, carpeting was ruined, costing $1,100 to replace, and the floors and electrical system were damaged. This was sufficient evidence to support the trial court's award of $14,500. Moreover, the award was certainly within the scope of the evidence indicating that the Lalens' residence had decreased in value in excess of $16,000. We find no error.

■ Gasway also asserts that the trial court erred in awarding the Lalens the reasonable rental value of the home for the period until the flooding problem is removed. The Lalens respond that the appropriate measure of damages in cases involving the depravation of the use of property is its fair rental value during the time the injury exists. *Ashland Pipeline, supra.* The trial court found that the fair rental value of the real property and residence prior to the flooding was $150 per month. However, the uncontradicted evidence indicates that the Lalens never moved out of their home. They continued to reside there during the entire period of the flooding problem. Nor was there any evidence that the Lalens rented or intended to rent their home or property. Therefore, this portion of the judgment must be vacated.

ISSUE V: *Injunctive Relief*

Gasway finally contends that the trial court erred in enjoining him to remove the obstruction, restore the watercourse, and permanently refrain from obstructing the watercourse in the future. Gasway merely

argues that the trial court's finding that a natural watercourse existed was erroneous and therefore the issuance of the injunction was erroneous.

[12] It is well settled that an injunction lies to protect the right to an unobstructed flow of water in a natural watercourse. *Birdwell, supra; Davidson v. Mathis* (1979), 180 Ind.App. 524, 389 N.E.2d 364; *Foster v. Malsbary* (1927), 86 Ind.App. 411, 157 N.E. 446. As examined above, the court properly determined that a natural watercourse existed whose flow Gasway unlawfully obstructed. Accordingly, the trial court did not err in imposing an injunction against Gasway to remove and permanently refrain from maintaining the obstruction.

For the above reasons, the judgment is affirmed.

Judgment affirmed in part and reversed in part.

ROBERTSON, J., concurs.

SULLIVAN, J., concurs in part and dissents in part with opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur as to Issues I, II, III and V. As to Issue IV, I dissent.

Ordinarily, recoverable damages to real estate may be measured by diminished fair rental value or by diminished fair market value but not by both, for to do so would result in double recovery. 25 C.J.S. *Damages* § 84b, at 929 (1966); 22 Am.Jur.2d *Damages* § 402, at 488 (1988). Here the trial court awarded $5,000 for decreased fair market value not attributable to the flooding but rather attributable to the publicity concerning the situation. In addition, the court awarded $150 per month representing a decrease in fair rental value during the period of time the property was affected by the flooding. These awards were apparently not intended to be duplicative or in conflict; nor do I view them to be so. When damage to real estate is temporary, although continuing, as with the obstruction of the watercourse here, the proper measure of damages is the fair rental value for the period of the obstruction and the impairment of use. 25 C.J.S. *Damages* § 84, at 926 (1966); 22 Am.Jur.2d *Damages* § 408, at 492 (1988). When damage is fixed, as with the structural damage to the house, the proper measure is the diminution of fair market value, or the cost of restoration. 25 C.J.S. *Damages* § 84a, at 921–924 (1966); 22 Am.Jur.2d *Damages* § 401, at 485–486 (1988). Therefore, in the particular case before us, both measures of damages are appropriate with respect to the separate elements of the damage. I nevertheless consider the damage award to be in error.

The majority disallows rental value as an appropriate measure of damages solely because Lalens did not lose total use of the property nor did they contemplate renting the premises. In this, I believe my colleagues err. The measure of damages is appropriate even though the use and enjoyment is diminished rather than destroyed. *See Indiana State Highway Commission v. Pappas* (1976) 2d Dist., 169 Ind.App. 611, 349 N.E.2d 808, *trans. denied*, 266 Ind. 49, 360 N.E.2d 1. Furthermore, a landowner may recover fair rental value for interference with the use of the property even though he did not have or contemplate a valid rental arrangement with another person. *See Wallace v. Rogier* (1979) 1st Dist., 182 Ind.App. 303, 395 N.E.2d 297. More to the point is *Dunn v. Chicago, Indianapolis & Louisville Railway Co.* (1917) 63 Ind.App. 553, 114 N.E. 888. There, the railroad obstructed a watercourse causing overflow over Dunn's land. The decision makes no mention of any landlord-tenant relationship in existence or contemplated. However, the court held:

"Appellant was permitted to show the damages to his lots by proving the loss to the rental value thereof. We think the trial court adopted the proper rule for ascertaining appellant's damages." 63 Ind.App. at 560, 114 N.E. 888.

I do not view the $5,000 amount awarded for the adverse effect of the publicity and notoriety as duplicative of an appropriate fair rental value measure of damages for the simple reason that damages for ad-

verse publicity is not the same as damages correctly assessed for a lessening of value. For this very reason, however, the $5,000 damage award is erroneous. Diminution of value is the measure for injury which is temporary and may be cured. Therefore, where, as here, the flooding has been or will be remedied, no *reasonable* prospective purchaser could properly consider past publicity with regard to present value. For this reason, the notoriety or publicity factor is an inappropriate consideration. *See* 22 Am.Jur.2d *Damages* § 413 (1988).

As stated in *Delano v. Smith* (1910) 206 Mass. 365, 92 N.E. 500, 501:

"On principle it follows that mere injury to the reputation of real estate or the supposed diminution of its value resting on whimisical or sentimental grounds or arising from dictates of custom or taste do not constitute waste. These considerations have nothing to do with material substance, but depend upon evanescent or intangible preferences or prejudices.

To the same effect is *Johnson v. Farwell* (1831) 7 Me. 370, 375–376, 22 Am.Dec. 203.

I would reverse and remand for a reassessment of damages consistent with this opinion and in the light of the evidence now of record in the cause.