**Jeffrey WESTON, Appellant–Defendant,**

v.

**Richard L. BUCKLEY,**
**Appellee–Plaintiff.**

No. 02A03–9601–CV–1.

Court of Appeals of Indiana.

March 19, 1997.

Thomas A. Swihart, Fort Wayne, for Appellant–Defendant.

Thomas M. Kimbrough, Cathleen M. Shrader, Barrett & McNagny, Fort Wayne, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Jeffrey Weston appeals from the trial court's judgment in favor of Richard L. Buckley for misappropriation of a trade secret. Weston presents three issues for our review which we restate as follows:

I.    Whether the trial court erred in determining that Buckley's paintless dent removal process qualified as a trade secret.

II.   Whether the trial court erred in finding that Weston had misappropriated Buckley's trade secret.

III. Whether the trial court erred in computing damages.

We affirm.

The facts most favorable to the judgment indicate that in 1991 Buckley formed PressA–Dent which provided paintless dent removal ("PDR") services. Prior to establishing the business, Buckley invested a substantial amount of time and effort in investigating the various PDR processes and franchise opportunities. During the first year of operations, Press–A–Dent incurred a net loss of over $302,000.

The PDR process is not easily learned. Although there are many videotape programs, short training sessions, and manuals available, they are ineffective means of training individuals in the process and individuals using these methods are unable to perform commercially acceptable results. Instead, to achieve commercially acceptable results, individuals must attend intensive training sessions in a five to eight week program. Companies who provide PDR services consider their particular combination of lighting, tools, and location of the dent removal a trade secret and protect that information.

After beginning Press–A–Dent, Buckley hired Weston as an independent contractor to perform the PDR process. Buckley paid for Weston's six week training session with Dent Pro, a company that provides training in its PDR process. The total cost of the training was approximately $21,000. Buckley also hired other employees and paid for their training with Matteson, another provider of PDR services. The Matteson process differed from the Dent Pro process. As time passed, Buckley developed his own PDR tools and combined aspects of the Dent Pro PDR process and the Matteson PDR process to develop his own unique PDR process which was utilized by Press–A–Dent employees.

Included within Weston's contract with Buckley was an agreement that Buckley would train Weston in the PDR process. In return, Weston agreed not to disclose the process to anyone. Specifically, the contract provided that:

Contractor fully understands that the Process is to be for the sole and exclusive benefit of Buckley, and that Buckley intends to take all necessary precautions to carefully guard its secrecy. Consequently, contractor agrees that he will never, directly or indirectly, use or disclose, divulge, teach or otherwise facilitate or permit the transfer of the Process or related techniques and tools to anyone, other than pursuant to the terms of this Agreement.

Record at 589. In 1992, Weston terminated his employment with Buckley and opened his own PDR business known as Papa Dent. He hired an employee to perform the services and began operations shortly after leaving Press–A–Dent.

Weston alleged that he was not performing Buckley's PDR process at Papa Dent. he stated that he learned a new PDR process through a videotape and trained his employees with the videotape. Papa Dent immediately began earning profits and by the end of 1994 had gross sales of $417,046.25.

Buckley filed suit alleging that Weston had misappropriated his PDR process which was a trade secret. After a bench trial, the trial court found that Buckley's process did qualify as a trade secret and awarded him damages in the amount of $271,280.07 for Weston's misappropriation. This appeal ensued.

## I.

### *Trade Secret*

Weston first argues that the trial court erred in determining that Buckley's PDR process was not readily ascertainable and thus, was afforded trade secret protection. We note at the outset that the trial court entered specific findings of fact at Buckley's request. When a party has requested specific findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, this court must determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied.* In reviewing the judgment, we must first determine

whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *DeHaan v. DeHaan,* 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Id.*

■ A trade secret is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

IND.CODE § 24-2-3-2 (1993). The determination of whether a particular device or process is a trade secret is a fact sensitive determination. *Amoco Production Co. v. Laird,* 622 N.E.2d 912, 916 (Ind.1993). Simply because a process or device contains elements which are readily ascertainable in the public domain does not preclude the finding that it is not readily ascertainable. Instead, a process may include elements which alone are readily ascertainable, but when combined can qualify for trade secret protection. *Id.* at 919. What must be shown is that the combination is unique and not previously known in the marketplace. *Id.* at 920.

■ In determining whether a process is readily ascertainable or not, the court must look to the degree of time, effort and expense required to duplicate or acquire it by proper means. *Id.* at 918. The burden of proving that a process is not readily ascertainable falls upon the party asserting trade secret status. *Id.* at 920. He must show that duplication of the information or process would require a substantial investment of time, expense and effort.[1] *Id.*

■ Here, the trial court found that Buckley devoted a great deal of time, expense and effort to developing a new PDR process. He combined elements of other processes and developed his own tools and techniques. It also found that a commercially acceptable PDR process could not be developed or learned from short courses, videotapes, and training manuals and instead involved a great deal of time and expense. This supports the conclusion that the PDR process developed by Buckley could not be acquired or duplicated without a substantial investment of time, expense and effort and thus was not readily ascertainable. *Id.* Because it was not readily ascertainable, the trial court correctly determined that Buckley's PDR process should be afforded trade secret protection.

## II.

### *Misappropriation*

Next Weston argues that the trial court's findings are insufficient to show that he misappropriated the trade secret. Misappropriation occurs when a person acquires or uses a trade secret with knowledge that the trade secret was acquired by improper means. IC 24-2-3-2. Improper means includes breach of a duty to maintain secrecy. *Id.*

■ Weston contends that the trial court's findings fail to include a finding that he ever learned Buckley's PDR process. Instead, he contends that the process he knew

---

1. Weston argues that *Amoco* also holds that the party asserting trade secret status must show that the combination affords a competitive advantage. However, the portion of the opinion from which he derives this additional element is the court's survey of the law from other jurisdic-

tions. *Id.* at 919–20. In determining whether Amoco had met its burden of proving that its information was a trade secret, the court makes no mention of this additional requirement. *See Id.* at 920.

and learned was the Dent–Pro process. Even though there is no explicit statement that Weston learned and performed Buckley's PDR process, the court found that much of the development of Buckley's PDR process occurred while Weston worked for Buckley. In addition, the trial court found that the videotape from which Weston allegedly learned a new PDR process simply enabled him to enhance Buckley's process. Implicit within these findings is Weston's knowledge of Buckley's process. The trial court also found that Weston, by virtue of his contract with Buckley, had a duty to maintain the secrecy of the process and not to use the process for his own gain. He breached that duty by using Buckley's process in his own business and teaching the process to his employees. *Id.* Thus, we conclude that the trial court's findings support its conclusion that Weston misappropriated the trade secret.

### III.

#### *Damages*

In determining the unjust enrichment gained by Weston as a result of his misappropriation of Buckley's PDR process, the trial court estimated Weston's net profits. Weston argues that this estimation is speculative and unsupported by the evidence. Weston fails to provide any authority to support his argument. Thus, he has waived this argument on appeal. Ind. Appellate Rule 8.3(A)(7); *Huff v. Langman,* 646 N.E.2d 730, 732–33 (Ind.Ct.App.1995).

Waiver notwithstanding, Weston's argument also fails on the merits. IND. CODE § 24–2–3–4 (1993) provides for damages in the event of a misappropriation of a trade secret. The complainant is entitled to recover for actual loss caused by the misappropriation and for the unjust enrichment resulting from the misappropriation. *Id.* The computation of these damages is within the sound discretion of the trial court. *Gasway v. Lalen,* 526 N.E.2d 1199, 1203 (Ind.Ct.App. 1988), *reh. denied.* Although the damage award cannot be based upon mere speculation or guesswork, no degree of mathematical certainty is required in the damage calculation. *Id.* We will not reverse the trial court's

award of damages so long as it is supported by record evidence. *Id.* On review we will not reweigh the evidence nor judge the credibility of witnesses. *Gigax v. Boone Village Ltd. Partnership,* 656 N.E.2d 854, 856–57 (Ind.Ct.App.1995). Moreover, any doubts and uncertainties as to proof of the exact measure of damages must be resolved against the defendant. *Boone County REMC v. Layton,* 664 N.E.2d 735, 741 (Ind. Ct.App.1996), *trans. denied.* Public policy and justice require that the risk of uncertainty in the computation of damages be borne by the wrongdoer. *Id.*

Here, there was conflicting evidence concerning the actual amount of Weston's net profits. The financial reports from Papa Dent show that his operating expenses reduced his gross income by as much as 56%. However, evidence was also presented to show that prior to incorporation his expenses were as low as 15% of his gross receipts. Included within the additional expenses after incorporation were Weston's salary, sponsorship for a race car which Weston testified was a hobby, and legal fees. It is within the trial court's discretion to determine the credibility and weight given to these financial reports. *Gigax, supra,* at 856–57. There is evidence from which the trial court could determine that the reasonable expenses incurred by Weston and deducted from gross receipts were as high as 56% of gross receipts or as low as 15% of gross receipts. Any uncertainty in determining the proper level of expenses and thus the proper measure of damages must be resolved against Weston. *Boone County REMC, supra,* at 741. Although the trial court's estimation of the proper percentage of expenses is not mathematically certain, there is evidence to support it and thus, it is not based upon mere speculation. *Gasway, supra,* at 1203. Accordingly, we conclude that the trial court did not abuse its discretion in calculating the damage award.

Affirmed.

HOFFMAN and GARRARD, JJ., concur.