FOR PUBLICATION



ATTORNEYS FOR APPELLANTS:

**JOSEPH A. MILLER**
Seymour, Indiana

**TALLY LYKINS**
North Vernon, Indiana

ATTORNEY FOR APPELLEES:

**J. GRANT TUCKER**
JONES PATTERSON & TUCKER
Columbus, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DIANNE M. ROSS, WILLIAM L. ROSS, MARTHA JANE MILHOUSE and PAUL DAVID MILHOUSE, | ) ) ) ) |
| Appellants-Petitioners, | ) ) |
| vs. | ) No. 03A01-1210-PL-489 ) |
| BARTHOLOMEW COUNTY DRAINAGE BOARD and STEPHEN A. HOEVENER, JIM PENCE, RON SPEAKER, JEFF SCHROER, And CARL LIENHOOP in their capacity as Members of the Bartholomew County Drainage Board, | ) ) ) ) ) ) ) |
| Appellees-Respondents. | ) ) |

APPEAL FROM THE BARTHOLOMEW CIRCUIT COURT
The Honorable Judith A. Stewart, Special Judge
Cause No. 03C01-1109-PL-5236

**August 22, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Plaintiffs, Dianne M. Ross, William L. Ross, Martha Jane Milhouse and Paul David Milhouse (collectively, Appellants), appeal the trial court's order in favor of Appellees-Defendants, Bartholomew County Drainage Board and Stephen A. Hoevener, Jim Pence, Ron Speaker, Jeff Schroer, and Carl Lienhoop, in their capacity as members of the Bartholomew County Drainage Board (collectively, the Drainage Board).

We affirm.

## ISSUES

The Appellants raise four issues on appeal, which we consolidate and restate as the following two:

(1) Whether the trial court abused its discretion when it found that an obstruction existed on Appellants' property which impeded the drainage of a natural surface watercourse; and

(2) Whether the trial court abused its discretion in calculating the attorney fees it awarded to Appellants for the Drainage Board's violation of Indiana's Open Door Law.[1]

## FACTS AND PROCEDURAL HISTORY

Bartholomew County Road 650 South runs east to west in Bartholomew County, Indiana. The County Road comes off U.S. Highway 31, which runs north to south. Going from U.S. Highway 31 onto County Road 650, the road follows the lay of the land and gradually drops in elevation to a certain point along the road, where it begins to rise

---

[1] The Drainage Board raises the same issue on cross-appeal.

2

again. Alongside County Road 650, a ditch runs east to west. An earthen berm or levee has been erected alongside the ditch on private property, separating the ditch from the farm field owned by Appellants.

Occasionally, after heavy rains, water floods County Road 650. At some point, the County Highway Department trespassed onto Appellants' private property and dug the berm out in spots. However, the berm was filled up again with sandbags by Appellants to prevent the water from the ditch from flooding the field.

On May 13, 2011, the County Highway Department filed a petition with the Drainage Board pursuant to Ind. Code § 36-9-3-27.4-4, alleging that an obstruction in a drain or surface watercourse existed on property owned by Appellants and that this obstruction was impeding the drainage of water from County Road 650 and the adjacent road right-of-way, causing water to back up onto County Road 650 thereby creating a traffic hazard. The Drainage Board scheduled a hearing on the petition for August 8, 2011. However, when the Drainage Board's regular meeting of July 18, 2011 ended early, the board members decided to go on a site visit to visually acquaint themselves with the physical characteristics of the area around Appellants' property and County Road 650. On July 29, 2011, Appellants' filed a Complaint with the Indiana Public Access Counselor, claiming that by convening on site on July 18, 2011 without providing prior public notice of their intent to do so, the Drainage Board violated the Indiana Open Door Law. In August 2011, the Public Access Counselor issued an advisory opinion asserting that the Drainage Board violated the Open Door Law.

3

At the August 8, 2011 Drainage Board meeting, the Drainage Board continued the hearing on the obstruction petition and rescheduled it for September 12, 2011. Also at the meeting, the Drainage Board announced that board members would conduct a site visit to the area around Appellants' property and County Road 650 on August 22, 2011. This site visit occurred as scheduled.

On September 12, 2011, the Drainage Board conducted a hearing on the County Highway Department's petition. At the conclusion of the hearing, the Drainage Board found the existence of a natural surface watercourse which was obstructed at Appellants' property. The Drainage Board also found that this obstruction was not intentionally created by Appellants and that the removal of the obstruction would promote better drainage of County Road 650 South at the right-of-way and would not cause unreasonable damage to Appellants' property.

Appellants petitioned for review of the Drainage Board's decision. Besides challenging the Drainage Board's determination of a natural surface watercourse, the petition also alleged that the Drainage Board had twice violated the Open Door Law. First, Appellants contended that the Drainage Board failed to give public notice of their August 22 site visit. According to Appellants, pursuant to Indiana Code section 5-14-1.5-5, the Drainage Board was required to post a notice of the site visit meeting in its principal office at least 48 hours before the meeting. Secondly, Appellants also alleged that the Drainage Board committed another Open Door violation by conducting an improper executive session at the September 12, 2011 hearing. The Drainage Board denied all allegations.

4

On June 5, 2012, the trial court issued an order scheduling an evidentiary hearing on the issue of whether an executive session was conducted on September 12, 2011. The Appellants subsequently withdrew their allegation that the Drainage Board held an improper executive session. On October 4, 2012, the trial court issued an order, affirming the Drainage Board's decision and awarding Appellants $3,766 in attorney fees for the Drainage Board's violation of Indiana's Open Door Law.

Appellants now appeal. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Natural Surface Watercourse*

Appellants contend that the trial court erred in affirming the Drainage Board's finding that a natural surface watercourse was obstructed by the earthen berm or levee which had been erected on Appellants' property.

Indiana Code section 36-9-27-107 governs judicial review of a drainage board decision, providing that "[i]n affirming or setting aside a decision or determination of the board, the court shall enter its findings and order or judgment on the record." In addition, Indiana Trial Rule 52(A)(3) states in relevant part that the trial court shall make special findings of fact without request "in any . . . case provided by these rules or by statute." Accordingly, the trial court was required to enter special findings of fact.[2] *See* Ind. T.R. 52(A)(3).

---

[2] The purpose of special findings is to provide the parties and the reviewing court with the theory upon which the trial court decided the case in order that the right of review for error may be effectively preserved. *McGinley-Ellis v. Ellis*, 638 N.E.2d 1249, 1252 (Ind. 1994). Here, the trial court made one specific finding stating that:

the Drainage Board had credible, conflicting evidence as to whether the berm in question constituted an obstruction to a natural surface watercourse, and, indeed whether there existed a

5

We apply a two-tiered standard of review to special findings entered under Trial Rule 52(A). *Clouse v. Noble Co. Drainage Bd.*, 809 N.E.2d 849, 857 (Ind. Ct. App. 2004), *trans. denied*. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous. *Id.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Id.* Findings are clearly erroneous where a review of the record leaves us firmly convinced that a mistake has been made. *Id.* While we defer to the trial court's findings of fact, we do not defer to its conclusions of law. *Schrader v. Porter Co. Drainage Bd*, 880 N.E.2d 304, 307 (Ind. Ct. App. 2008), *trans. denied*.

Contesting the Drainage Board's conclusion of the existence of a natural surface watercourse, Appellants characterize the nature of the water flow as diffuse surface water flowing in an undefined direction and in an undefined manner. By defining the water flow as diffuse surface water, Appellants focus on the common enemy doctrine which allows a landowner to deal with diffuse surface water in accordance with his own convenience. On the other hand, the Drainage Board maintains that while Appellants

---

natural surface watercourse. The court cannot say that the Board was clearly in error in making its findings, nor was there any allegation or evidence that the Board exceeded its authority or discretion.

(Appellants' Br. p. 29). Although the trial court's sole special finding is brief, it directs us to the Drainage Board's order which is sufficiently detailed in the reason for its decision and as such, we are able to ascertain the trial court's theory to decide the case.

6

correctly cite the tenets of the common enemy doctrine, it is simply not applicable to the disputed watercourse.

The broad issue of whether Appellants should prevail on appeal is thus dependent upon the qualification of the watercourse causing the road to flood. Surface water is defined as water which is diffused over the natural slope of the ground, not following a defined course or channel. *Gasway v. Lalen*, 526 N.E.2d 1199, 1201 (Ind. Ct. App. 1988), *reh'g denied*. Pursuant to the common enemy doctrine, this surface water is the common enemy of both upper and lower tenants. *Argeylan v. Haviland*, 435 N.E.2d 973, 975 (Ind. 1982). Each tenant may protect himself from the flow of surface water as best he can, including walling it out, walling it in, and diverting or accelerating its flow. *Id.*

On the other hand, a natural surface watercourse is defined as "an area on the surface of the ground over which water from falling rain or melting snow occasionally and temporarily flows in a definable direction and channel." I. C. § 36-9-27.4-3.[3] It is characterized by well-defined banks and a bottom through which water flows in a definite direction for a substantial period each year. *Gasway*, 526 N.E.2d at 1201. The size of the watercourse is immaterial as is the necessity of a constant water flow. *Id.* It is sufficient that water from heavy rains is regularly discharged through a well-defined channel in order to constitute a natural watercourse. *Id.* The law pertaining to natural watercourses

---

[3] Although Appellants state "natural" as an additional requirement to establish a natural surface watercourse, the statutory definition does not include this element and we have found no case law indicating that "natural" is intended to be a magic word in this context. Rather, it appears that "natural" refers to the natural stream of water that flows along an identifiable course. *See Romine v. Gagle*, 782 N.E.2d 369, 381 (Ind. 2003) (referring to a natural surface watercourse as one through which water regularly, though not constantly, flows along and through an identifiable and more or less permanent course, which includes among its features a bed where a natural stream of water runs.)

7

prohibits a lower landowner from blocking or obstructing the natural flow of the water through the watercourse and as such, the common enemy doctrine is inapplicable. *Id.*

In the present case, the evidence established the presence of a natural surface watercourse. Tom Finke (Finke), Head of Hydrology at the County Surveyor's Office, testified that the side ditch, which runs in between County Road 650 and the earthen berm, is a defined channel. Similarly, Martin Mann (Mann), Appellants' expert, stated on cross-examination that "a roadside ditch [] directs the water to the west." (Transcript p. 73). Agreeing that this ditch represented a channel, Mann added that "at some point along that channel the berm begins and the water flows between the berm and the road . . . in the ditch." (Tr. pp. 73-74). Mann conceded that the roadside ditch, which is "a defined directional channel where water flows" could be termed a "water course." (Tr. p. 83). The exhibits submitted by both parties clearly indicate that this ditch consists of well-defined banks and a bottom through which water flows in an east-west direction after rainfall or snow. Therefore, the evidence permits a reasonable conclusion that water runs through a natural surface watercourse that is characterized by a shallow ditch.

It is generally accepted that a landowner may improve his land in any way to combat surface water, but that "owners of lands may not obstruct watercourses to the injury of others." *Schlichter v. Phillipy*, 67 Ind. 201, 205 (1879). A property owner who receives water by way of a natural watercourse may not obstruct the natural flow of the watercourse to cast the water back on the upper proprietor. *Birdwell v. Moore*, 439 N.E.2d 718, 721 (Ind. Ct. App. 1982). In this light, an obstruction is defined as

a condition that:

8

(1) exists within or near a drain; and
(2) prevents or significantly impedes the flow of water through the drain.

(b) The term includes the following:
    (1) The presence of:
    (A) one (1) or more objects inside or near a drain;
    (B) a quantity of materials inside or near a drain; or
    (C) damage to a drain;
that prevents or significantly impedes the flow of water through the drain.

I.C. § 36-9-27.4-4.

The testimony reflects that the earthen berm or levee has been erected alongside the ditch on Appellants' property. At some point, the levee "that took the water to a low point of the field" was extended "past the low point so the water could no longer flow." (Tr. p. 8). Because the berm is higher than the road, the water backs up over the road, resulting in an icy road in winter. Finke clarified that the berm is obstructing the flow of water through the ditch because "when [the] water fills that side ditch up, it had to get on the road before it can bypass the berm[.]" (Tr. p. 44). "The berm is the highest point, and then the road would be the next highest." (Tr. p. 44). "The field [] is lower than the road[.]" (Tr. p. 44). Therefore, we agree with the trial court that the berm amounts to an obstruction which impedes the natural flow of the watercourse. Thus, the trial court did not commit clear error in affirming the Drainage Board's conclusion that the removal of the obstruction would promote better drainage of County Road 650.

II. *Attorney Fees for Violation of Indiana's Open Door Law*

The parties do not dispute that a violation of Indiana's Open Door Law occurred when the Drainage Board conducted a site visit on August 22, 2011 without posting the

9

statutorily required notice. Both parties, however, argue that the trial court erred in the amount of attorney fees it awarded to Appellants.

The legislature passed the Open Door Law, codified at Indiana Code section 5-14-1.5 *et seq*., in 1977 with the intention that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Gary/Chicago Airport Board of Authority v. Maclin*, 772 N.E.2d 463, 468 (Ind. Ct. App. 2002). Indiana Code section 5-14-1.5-7 provides in relevant part:

> In any action filed under this section, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if:
>
> > (1) the plaintiff prevails; or
> > (2) the defendant prevails and the court finds that the action is frivolous and vexatious.

We review the trial court's decision regarding attorney fees under an abuse of discretion standard. *Id*. at 470. We will not reverse the trial court's decision unless the award is clearly against the logic and effect of the facts and circumstances. *Id*. In reviewing an award of fees and costs, we will not substitute our judgment for that or the trial court, nor will we reweigh the evidence presented on appeal. *Id*. at 472-73.

Here, the trial court explained its award of attorney fees to the Appellants as follows:

> 5. Pursuant to I.C. 5-14-1.5-7(f), "a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation" to the Petitioners [Appellants on appeal] for the claim on which they prevailed under the Open Door Law. This award of reasonable attorney fees is mandatory.
>
> 6. The Petitioners request attorney fees in the sum of $8,586.25.

10

7. The court finds that only a portion of the requested fees is recoverable. Some of the requested fees include work beyond the claim on which the Petitioners prevailed. For instance, the court finds that the Petitioners should not be entitled to full recovery of fees for drafting the complaint and scheduling conferences with the court because the complaint and scheduling conferences included the petition for judicial review and the subsequently dismissed executive session claim. Similarly, the research on de novo hearings related to the petition for judicial review, not the violation of the Open Door Law. Moreover, those fees that relate solely to alleged violations of the Open Door Law include fees not only for the violation on which the Petitioners prevailed, but also on the executive session claim that was dismissed by the Petitioners. Taking these factors into consideration, the court awards reasonable attorney fees to the Petitioners in the sum of $3,766.00.

(Appellant's App. p. 10).

Our review of the evidence reveals that Appellants submitted two affidavits in support of their request for attorney fees. The first affidavit listed fees from September 2011 through January 2013 and included the preparation of the complaint, a review of the Drainage Board meeting notes, a review of Open Door Law, and scheduling a conference with the trial court. The second affidavit requested an additional $531.25 for researching the Open Door Law, checking for the Drainage Board Meeting Notice, working on the Open Door Law brief, and preparation for and attending the hearing on the Open Door Law.

This evidence supports the trial court's findings that some of the Appellants' requested fees included work beyond the claim on which the Appellants prevailed. The evidence further supports the trial court's findings that the fees related solely to alleged Open Door Law violations included fees for not only the violation on which Appellants prevailed, but also the executive session claim, which the Appellants dismissed. Based

11

on this evidence, the trial court did not abuse its discretion in awarding Appellants $3,766.00 in attorney fees. The Drainage Board's arguments that the fees should be reduced to a nominal amount because the violations were unintentional, a good-faith effort to cure was made, and the violation had no or only minimal impact in preventing or impairing public knowledge amounts to a request to reweigh the evidence, which we cannot do. *See Maclin*, 772 N.E.2d at 452-53. Therefore, we conclude that the trial court did not abuse its discretion.

CONCLUSION

Based on the foregoing, we conclude that the trial court properly found that an obstruction existed on Appellants' property which impeded the drainage of a natural surface watercourse; and the trial court did not abuse its discretion in calculating the amount of attorney fees it awarded Appellants for the Drainage Board's violation of Indiana's Open Door Law.

Affirmed.

BRADFORD, J. and BROWN, J. concur