Marie Duncan **BIRDWELL**, John Duncan, Appellants-Defendants,

v.

Charles W. **MOORE**, Grace Lorene Moore, Appellees-Plaintiffs,

**Madison County, State of Indiana, Delaware County, State of Indiana, Appellees (Third Party Defendants Below).**

No. 4–1081A164.

Court of Appeals of Indiana, Fourth District.

Sept. 15, 1982.

Kelley, Howard & Walker, Vincent Kelley, Anderson, for appellants-defendants.

Richard E. Kreegar, Chesterfield, for appellees-plaintiffs.

CONOVER, Judge.

After trial in Madison Circuit Court, Special Judge Alva Cox presiding, Marie Duncan Birdwell and John Duncan, appellants, were permanently enjoined from obstructing the flow of water coming from the farm of Charles W. and Grace L. Moore, appellees. A motion to correct errors was timely filed and overruled. Birdwell and Duncan appeal and present the following issues [1] for review:

1. Was the evidence sufficient to show a watercourse existed?

2. Did the evidence show the volume of flowage had been increased by artificial means?

3. Was the evidence insufficient to show the natural flow of water is onto the Birdwell and Duncan farm?

Affirmed.

### FACTS

Natural accumulations of surface water on the farm of Charles & Grace Moore drained into a channel in the middle of their farm. This channel drained to the northwest and emptied onto the farm of Marie Birdwell and John Duncan by way of a culvert under the road separating the two farms. The evidence showed water had flowed in that direction, by way of the waterway for over fifty years. The culvert was installed in 1924 by Birdwell and Duncan's father to deal with flooding problems occasioned by water emptying onto his property from the property now owned by the Moores.

Of the 95 acres on the Moore farm only 35 acres drain to the north. The remaining 60 acres drain to the southwest into Heagy Creek. Land surveys offered at trial showed an area of highest elevation around the perimeter of the 35 acre area and lower elevation at the north end of the grass waterway where water entered the culvert. A survey map admitted at trial identifies the drainage area with the captions waterway and grass waterway.

In 1973 Moore began to clear trees and debris from the waterway and repair erosion damage. Although Moore used several loads of dirt to repair soil erosion, testimony indicated no change in the natural slope of the terrain. Moore also cleared brush from the northern part of the waterway and replanted the area in grass to limit soil erosion.

In 1975 Duncan erected a three foot earthen dam in an attempt to dam out water draining onto his farm from the Moore farm. This dam proved ineffective against water coming from the Moore farm, so Duncan extended the dam and later constructed two other earthen dams in 1976 and 1977. As a result, water backed up onto the Moore farm and flooded five acres of wheat.

### DISCUSSION AND DECISION

When we review a decision for sufficiency of evidence we neither re-weigh the evidence nor re-assess the credibility of witnesses. We look only to the evidence and reasonable inferences arising therefrom which support the conclusion of the trial court. We will reverse only when the evidence leads to but one conclusion and the trial court has rendered a contrary judgment. *Davidson v. Mathis*, (1979) Ind.App., 389 N.E.2d 364, 366.

1. The issues have been restated for the purpose of clarity.

Birdwell and Duncan initially argue there was no showing that water flowing onto their land from the Moore farm ran in the bed of a natural watercourse. This argument implicates two ancient rules regarding flowing waters.

■ Surface water is water which diffuses itself over the natural slope of the ground, not following a defined course or channel. *Taylor v. Fickas*, (1878) 64 Ind. 167. Otherwise stated, surface water is:

[w]ater from falling rains or melting snows which is diffused over the surface as the natural elevations and depressions of the land may guide it but which has no definite banks or channels, .... If the natural depressions and elevations of the land form a way for water but such way has no well defined banks or channel and carries no water except that which drains into it from adjoining lands in wet seasons or as the result of freshets, then such way is not a natural water course but a mere surface drain and falls within the doctrine that surface water is a common enemy which any proprietor may combat as best he can.

*Capes v. Barger*, (1953) 123 Ind.App. 212, 214–215, 109 N.E.2d 725, 726. Surface water is regarded as the common enemy of both upper and lower tenants and the lower tenant may protect himself from the flow of surface water as best he can, including damming the water out. *Thompson v. Dyar*, (1955) 126 Ind.App. 70, 130 N.E.2d 52.

■ However, water flowing in a channel or watercourse is not surface water and the common enemy rule is not applicable. The law pertaining to watercourses prohibits lower proprietors from blocking the flow of water through a watercourse. *Argyelan v. Haviland*, (1982) Ind., 435 N.E.2d 973. A natural watercourse is a channel through which water flows and has flowed, not necessarily all the time, but ordinarily and permanently for a substantial period each year. *Walley v. Wiley*, (1914) 56 Ind.App. 171, 104 N.E. 318. The size of a watercourse is immaterial as is the necessity of constant flowing water. *Gwinn v. Myers*, (1955) 234 Ind. 560, 129 N.E.2d 225.

■ It is often said that a watercourse must have a defined bed and banks. *Lowe v. Loge Realty Co.*, (1966) 138 Ind.App. 434, 214 N.E.2d 400. These criteria are not conclusive, however. Whether a watercourse exists must be determined from the applicable facts.

A channel and banks and bed are ordinarily classed as the surface indications of a natural water course. They are, however, but the indicia of a water course. The essential characteristics of a water course that give it recognition as such are substantial existence and unity, regularity, and dependability of flow along a definite course, so that if a stream traverses the land of adjoining proprietors, it may be identified and recognized as such. The usual marks of such a flow are channel, banks and bed made by the action of the water. Under some circumstances, however, a stream is classed as a natural water course in the absence of a well-defined channel as that term is usually understood, as where the water through a part of its course spreads over a considerable breadth of land.

*Vandalia R. Co. v. Yeager*, (1915) 60 Ind. App. 118, 128, 110 N.E. 230, 234.

■ A property owner who receives water by way of a natural watercourse may not obstruct the natural flow of the watercourse to cast the water back on the upper proprietor. *Lowe, supra*. When applied to the present set of facts, the determination of the presence of a watercourse is of prime importance, for if no natural watercourse exists Birdwell and Moore may dam the water flowing from the Moore farm.

■ Evidence presented at trial showed the existence of a natural watercourse. A surveyor, who had previously surveyed the area in question testified concerning the elevation of the land and noted the existence of a natural waterway. He also noted the watercourse had a bed and sides. Other testimony showed that water had run at regular intervals through the watercourse onto Birdwell and Moore's farm for at least

50 years. Other farmers familiar with the area gave similar testimony. A United States geological survey map also showed the existence of a natural watercourse running from the Moore farm across the Birdwell and Duncan farm. Duncan testified that water had always flowed from the Moore Farm towards his farm and that his father installed a culvert in 1924 to prevent the road separating the two farms from flooding. Judged by the standard previously enumerated we must conclude there was sufficient evidence of the existence of a natural watercourse.

■ Alternative to the previous argument, Birdwell and Duncan contend that even if a natural watercourse existed, Moore increased the flow of water onto Birdwell and Duncan's farm by channelling other surface water into the natural watercourse. Although water may not be dammed while flowing in a natural watercourse, neither may an upper tenant collect surface water and discharge it into the watercourse, increasing natural flowage and injuring the lower tenant. *Gene B. Glick Co. v. Marion Construction Corp.,* (1975) 165 Ind.App. 72, 331 N.E.2d 26.

The evidence indicated Moore removed brush and trees from the waterway and replanted the area in grass to limit erosion in the waterway. Moore also filled in erosion with dirt to repair the damage from heavy rains. The terrain of the land was not changed. The inferences support Moore. He merely repaired erosion damage and cleaned debris from the watercourse. There is no evidence an increase in water draining onto the Birdwell and Duncan farm resulted therefrom.

Other circumstances caused the increased accumulation of water on Birdwell and Duncan's farm. During the period in question, the area had received some heavy rains which could result in increased drainage. The record also discloses construction work closed a drainage ditch, forcing more water onto Birdwell and Duncan's farm. Farmers familiar with the area also stated their belief that construction of Interstate 69 had altered previous drainage patterns and may have caused heavier drainage upon the Moore property.

■ We conclude the evidence amply supports the judgment. Moore's clearing the land of debris and repairing soil erosion did not increase the amount of water in the watercourse. Any increase in water is attributable to other causes.

Birdwell and Moore contend the evidence showed natural drainage of surface water on the Moore farm was to the southwest not north towards the Birdwell and Duncan property. The facts most favorable to Moore do not permit such a conclusion. There was abundant evidence that the thirty-five acre tract had consistently drained to the northwest. Testimony by the land surveyor tended to show the elevation of the Moore farm decreased as it neared the waterway. Other testimony supported this conclusion. Water had drained to the north for at least fifty years. Birdwell and Duncan's father installed a culvert to deal with the problem in 1924. The evidence was sufficient to show the natural flow of water was onto the Birdwell and Duncan farm.

The judgment of the trial court is affirmed.

HOFFMAN, P. J. (sitting by designation), and MILLER, J., concur.