IN THE MATTER OF THE WEST CENTRAL CONSERVANCY DISTRICT, Appellant-Petitioner,
v.
TOWN OF AVON, Appellee-Intervenor.
No. 32A04-0610-CV-580.
Court of Appeals of Indiana.
October 17, 2007
ALAN M. HUX, GEOFFREY SLAUGHTER, JOHN D. PAPAGEORGE, MILDRED F. KRIZMANICH, Sommer Barnard, PC, Indianapolis, Indiana, ATTORNEYS FOR APPELLANT.
J. CHRISTOPHER JANAK, BRYAN H. BABB, STEPHEN C. UNGER, Bose McKinney & Evans, LLP, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE.

MEMORANDUM DECISION
FRIEDLANDER, Judge.
West Central Conservancy District (the District), challenges the trial court's grant of summary judgment in favor of the Town of Avon (the Town). Upon appeal, the District presents five issues for our review, which we consolidate and restate as whether summary judgment was appropriate.
We reverse and remand.
This case concerns the efforts of the District, a not-for-profit conservancy district established for the purpose of providing sewer services to certain areas in Hendricks County, to add a "purpose" providing it with authority to provide water supply and related services.[1] The facts most favorable to the non-movant, the District, reveal that in 2004, the District's Board of Directors began considering the feasibility of developing aquifers on its property and selling water from those aquifers at wholesale[2] to local retail water providers. On July 5, 2005, the District's Manager sent a letter to the District's sewer customers explaining an upcoming petition drive as the first step toward the addition of water supply and related services to its established purposes and suggesting that such could "potentially . . . provide supplemental revenue to benefit all [District] customers." Appendix at 422. The letter further stated:
This addition to our purpose will require further research, but it holds promise for generating additional income that would defray costs and supplement current rates, potentially prolonging the period of time before future sewer rate increases would be needed. To research this possibility, however, the [District] Board must have a representative number of freeholders[3] agree to adding this purpose by signing a petition.
Id.
During July and August 2005, more than 1,000 freeholders signed the District's petition to add a purpose, which was more than the required ten percent of the freeholders of the District. See I.C. § 14-33-1-4(2)(A) (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007). On August 23, 2005, the District's Board of Directors therefore passed a resolution pursuant to I.C. § 14-33-1-4(2) to add the purpose of "Providing water supply including treatment and distribution for domestic, industrial and public use" (the Purpose). Appendix at 36. In its resolution, the Board found that adding the Purpose (1) would be conducive to the public health, safety, or welfare of the District's freeholders and (2) that it has the potential "to provide additional revenues to offset the costs of providing sewer service to the District's customers . . . ." Id. (emphasis supplied). The Board filed the petition and its resolution in the Hendricks Circuit Court. See I.C. § 14-33-1-5(a) (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007). Pursuant to I.C. § 14-33-1-5(b), the trial court set an initial hearing on the petition for November 8, 2005, forwarded a copy of the resolution and petition to the Natural Resources Commission (NRC), and ordered notice of the hearing on the petition be published. The NRC then solicited comments from various state agencies in preparation for making its report to the court.
The Indiana Utility Regulatory Commission (IURC) responded to the NRC's inquiry, stating its position that it "has no objection to [the District's] petition for the additional purpose of providing water supply." Appendix at 427. The IURC commented, however, on the District's claim that the addition of the purpose to provide water service had the potential to "offset the costs" of providing sewer service to the District's customer, stating:
While the [IURC] does not desire to predetermine the issues of any particular case that may come before it, historically, the [IURC] has set rates based upon cost of service, and as such, cross-subsidization of costs from one type of utility service to another is not permissible.
Id. at 36, 428.
On August 11, 2005, while the District's petition drive was underway, the Town council voted to oppose the District's efforts to add a purpose. In response, the District issued a newsletter to its sewage service customers addressing the Town's opposition and explaining its views. The newsletter stated:
The [District's] goal is to look for additional revenue-producing resources within the statutory provisions of the Conservancy District Act. The wholesale and bulk sale of water could reduce rates or, at a minimum, sustain current rates for [District] customers. This goal is not at all related to the objectives of the [Town] and does not compete with the [Town's] interest in initiating a water utility.
Id. at 425 (emphasis supplied).[4]
On October 3, 2005, the Town filed a motion and supporting brief seeking leave to intervene[5] as well as a motion to continue the initial hearing set for November 8, to which the District objected. The trial court granted both of the Town's motions on October 4, 2005, and rescheduled the hearing on the District's petition for June 1, 2006. During October and November, more than fifteen separate parties and/or freeholders appeared and/or filed objections to the District's petition.
On February 17, 2006, the Town filed a Motion for Referral of Dispositive Issue to Indiana Utility Regulatory Commission and Stay of Proceedings. Specifically, the Town sought an "amicus ruling" on "whether Indiana law prohibits [the District] from expanding its authority to include the provision of water service for the sole purpose of using water revenues to lower sewer rates." Id. at 317. On February 21, 2006, before the District responded to the Town's motion, the trial court granted the Town's motion and requested an "amicus ruling" from the IURC on or before June 1, 2006 with regard to the following question:
May the [District], as a conservancy district established and operating under Ind. Code § 14-33-1 et[] seq., legally use water revenues to offset sewer costs or rates, whether by directly applying water revenues to lower sewer rates, by paying dividends to sewer ratepayers from water revenues, or by other similar means of cross-subsidization?
Id. at 338.
The District asked the trial court to reconsider and vacate its February 21 order. In a February 24, 2006 entry in the chronological case summary (CCS), the trial court ordered the parties to confer regarding the status of the referral and to notify the court within ten days of such conference. On March 2, 2006, the Town filed a response to the District's motion to reconsider/vacate. That same day, the trial court made the following entry onto the CCS:
The Court having reviewed the status of this case finds that . . . an opinion of the [IURC] might be of assistance to this court, if needed, and hereby orders the order of 2-21-06 to remain in full force and effect with the hearing of 6-1-06 vacated until further ruling from the [IURC].
Id. at 24.
On March 7, 2006, the parties filed their report to the court as requested, and the District renewed its request that the trial court vacate its February 21 referral and stay of proceedings. The court ordered that the case remain for referral before the IURC; thus, all proceedings remained stayed. On March 31, 2006, the trial court denied the District's motion to certify the referral order for interlocutory appeal.
On May 31, 2006, the Assistant General Counsel for the IURC submitted an amicus response of the Office of General Counsel for the IURC to the trial court and the parties. The IURC's "brief answer to the court's question" was:
Pursuant to Indiana statute, unjust and unreasonable rates are unlawful and illegal. Rates must be connected to the service provided and must be cost justified in order to be just and reasonable. A utility may not legally use revenues from its regulated water utility to lower rates of its unregulated sewer operations or to pay dividends to its sewer ratepayers. Such cross-subsidization would be an abuse of the authority granted to the utility, would result in unjust and unreasonable rates, and would, therefore, be illegal.
Id. at 376-77. Noting that the prevention of cross-subsidization is a function of rate-making and that it involves a balancing process by the IURC, the IURC reiterated that it has "consistently rejected cross-subsidization and allocation of costs from an unregulated affiliate to the regulated utility."[6]Id. at 379. The IURC further noted that it has "repeatedly required close scrutiny of affiliate contracts and transactions in order to prevent cross-subsidization and inappropriate cost allocations." Id. at 380.
On June 2, 2006, the Town petitioned the trial court to extend the stay of proceedings "pending outcome of dispositive motions." Id. at 383. On July 5, 2006, the trial court denied the Town's request to extend the stay of proceedings and entered an order (1) lifting the stay, (2) permitting the parties to conduct discovery, (3) directing the NRC to conduct its proceedings and file a report with the court as it deemed necessary, and (4) scheduling a status conference for October 17, 2006 in order to set a hearing on the District's petition to add a purpose.
In the meantime, the Town sought additional clarification from the State Board of Accounts with regard to the District's stated objective that it was seeking to add the Purpose in order to use revenues from providing water supply and services to "offset", "reduce", and/or "sustain" the sewer rates for its sewage service customers. Id. at 36, 425. Specifically, the Town sought the State Board of Accounts's position on the "legality of a conservancy district using revenues from one utility service to subsidize or lower rates of another type of utility service." Appellee's Appendix at 80. Bruce Hartman, State Examiner for the Indiana State Board of Accounts, responded as follows:
Given that IC XX-XX-XX-XX clearly restricts conservancy district's authorized charges to those "reasonable and just" to produce "sufficient revenue to pay all the legal and other necessary expenses incident to the operation of the water facilities" and "a reasonable profit" to be used for the maintenance of the water facilities, we concur with the opinion of the [IURC] that revenues generated by a water supply system should not subsidize the costs of providing sewer service.
Id. at 81.
On July 11, 2006, the Town filed a motion for summary judgment and brief in support thereof. On August 9, 2006, the District filed its brief in opposition thereto and also moved to strike three of the exhibits designated by the Town in support of its summary judgment motion. The Town responded to the District's motion to strike and filed its own motion to strike an affidavit submitted by the District in opposition to the Town's motion for summary judgment.
The trial court held a summary judgment hearing on August 29, 2006. On September 22, 2006, the trial court entered summary judgment in favor of the Town.[7] In granting summary judgment, the trial court entered findings of fact and conclusions of law. Specifically, the trial court found that the District's objective in adding the Purpose was to generate additional income to "offset" sewer operation costs which in turn could potentially lower sewer rates or delay the need to raise rates in the future and that the District made such representations to its freeholders in order to obtain the requisite number of signatures in support of the Petition. Appendix at 29. The trial court then noted the opinions provided by the IURC and the State Examiner for the State Board of Accounts that the use of revenues from the operation of a water facility to pay dividends to sewage service customers, to directly lower rates for sewage service customers, or other forms of cross-subsidization are not permissible as such would constitute an abuse of authority granted to the utility and would be illegal as it would result in unjust and unreasonable rates. Based upon its findings that the District could not engage in cross-subsidization, pay dividends, or otherwise directly use water revenues to lower rates for its sewage service customers, the trial court concluded that the District's request to add the Purpose, with its stated goal of creating revenue that could possibly reduce or maintain rates for sewage service customers, was "unlawful." Id. at 32. The court's conclusion that the District's request to add a purpose was "unlawful" apparently served as the basis for its conclusion that the petition was "insufficient, unnecessary, and infeasible" as the trial court made no other specific findings relating to sufficiency,[8] necessity,[9] or feasibility.[10]Id.
Our well-established standard of appellate review upon the grant or denial of summary judgment follows:
On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to a judgment as a matter of law. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court.
City of Mishawaka v. Kvale, 810 N.E.2d 1129, 1132-33 (Ind. Ct. App. 2004) (citations omitted).
The District first argues that the trial court's failure to hold the hearing required by I.C. § 14-33-1-5(f) requires reversal of the trial court's grant of summary judgment in favor of the Town. The Town responds that the District has waived the argument that the hearing required by I.C. § 14-33-1-5 precludes summary judgment because the District failed to make such argument to the trial court.
We begin by noting that I.C. § 14-33-1-5(f) provides that if an objection is filed to a district's petition, the trial court "shall" hold a hearing and determine (1) the sufficiency of the petition and (2) the necessity and feasibility of adding the purpose. Here, there were objections filed to the District's petition, but the trial court never held the hearing contemplated by I.C. § 14-33-1-5(f) because the matter was disposed of through the grant of summary judgment in favor of the Town. In granting summary judgment, however, the trial court made the requisite determinations called for by I.C. § 14-33-1-5(f), concluding that the District's Petition was "insufficient, unnecessary and infeasible." Appendix at 32. Without delving into the propriety of the procedural context of this case, we conclude that summary judgment was improper because the Town did not meet its initial burden of proving there were no genuine issues of material fact.
The starting point for our analysis is the Town's motion and the trial court's subsequent request for an "amicus ruling" from the IURC. The question posed by the trial court to the IURC was:
May the [District], as a conservancy district established and operating under Ind. Code § 14-33-1 et[] seq., legally use water revenues to offset sewer costs or rates, whether by directly applying water revenues to lower sewer rates, by paying dividends to sewer ratepayers from water revenues, or by other similar means of cross-subsidization?
Appendix at 338. Our first observation is that the question posed to the IURC presents a hypothetical question, as the details of the District's plan were not known. In other words, the question, as framed, in fact begs the question with respect to the ultimate issue in this casethat is, it assumes the District's plan will directly apply water revenues to lower sewer rates, pay dividends to sewer ratepayers, or employ some other means of cross-subsidization. A cursory review of Indiana law and statutes makes clear that the District would not be permitted to employ any of the methods suggested by the question posed to the IURC.[11] Thus, the question as posed essentially rendered the answer provided by the IURC meaningless.
The real question to be answered is what does the District's plan entail? How does the District plan to meet its stated objective of possibly lowering or sustaining rates for its sewer customers through the addition of a purpose to provide wholesale water supply? There is nothing in the record that gives insight into the details of the plan or method that the District may employ in of achieving its stated goal. The District has made only general statements that the addition of the purpose could possibly have the effect of lowering or sustaining rates for sewer customers. It is clear from statutes, case law, and regulatory opinions that the District may not directly apply water revenues to lower sewer rates, use water revenues to pay dividends to sewer ratepayers, or utilize other similar means of cross-subsidization, the three methods referred to in the question posed to the IURC. The District acknowledged as much and argued to the trial court that it hoped it could meet its goal through cost-allocation, which the District differentiates from cross-subsidization. The trial court rejected this argument, relying upon a portion of the IURC amicus ruling in which the IURC stated that it has "consistently rejected cross-subsidization and the allocation of costs from an unregulated affiliate to the regulated utility."[12]Appendix at 379.
In one of the matters cited in its amicus ruling for the above statement, the IURC rejected a petition for lessened regulation upon finding that the petitioning party was using its unregulated enterprises to subsidize its regulated enterprise. In the Matter of the Petition of New Paris Tel., Inc., 1989 Ind. PUC LEXIS 395, *23 (1989). Although both enterprises were operating out of the same facility, all of the office costs were allocated to the regulated utility and none were allocated to the unregulated affiliates. Id. at *21. The IURC concluded that such constituted improper subsidization, which was revealed only upon close regulatory scrutiny. Id. at *22-3. Thus, the IURC found that it was in the public interest to continue such close scrutiny. Id.
In New Paris Telephone, the IURC was clearly faced with a case involving cross-subsidization and made such determination based upon the specific facts of the situation presented to it for review. We reiterate that, in the instant case, the IURC had before it only those facts as provided by the trial court. There is nothing in the record that suggests the District may seek to attain its stated goal through such cross-subsidization methods the IURC has repeatedly found to be improper.
Moreover, we note that in a subsequent matter, In re New Paris Tel., Inc., 1991 WL 497166 (Ind. U.R.C.), the IURC expressed concern as to whether the petitioner was "properly allocating certain costs between its regulated and unregulated operations." Id. at *24. The IURC further noted the potential for harm if "subsidiary cost allocations are mishandled." Id. Such statements indicate to us that not all cost-allocation methods are impermissible or unlawful.
As noted by the IURC, a determination as to what constitutes cross-subsidization or an inappropriate cost allocation is a function of ratemaking. See Public Serv. Comm'n v. City of Indianapolis, 131 N.E.2d 308 (Ind. 1956). Ratemaking involves a balancing process by the Commission  rates may not be too low, but also may not be so high that they result in an unreasonable or excessive profit as a result of charging exorbitant prices to the consumer. Id. The process of ratemaking clearly requires more information than was provided to the IURC and does not seem to be an appropriate consideration during the initial stages of adding a purpose to an established conservancy district.
Turning back to the limited information before the IURC, the IURC explicitly stated in its "amicus ruling" its response was "intended to provide [the] court with the information it requested, [was] limited to the facts presented in the court's questions, and [was] not a ruling or order of the [IURC]."[13]Appendix at 376 (emphasis supplied). The IURC did not have before it the details of the District's plan, but rather, issued an opinion answering the question posed by the trial court. While the IURC's amicus ruling was responsive to the question posed, it was of little value to the court as the question posed presented a hypothetical situation and lacked the information necessary for the IURC to provide an informed opinion. The IURC did not have a specific matter before it and there were no details as to how the District intended to utilize cost allocation or in what manner the District intended to achieve its stated goal. The District's general statement that water revenues could possibly reduce rates for the District's sewer customers is not enough information from which the IURC could provide an informed opinion as to the legality or illegality of what the District was proposing to do. Indeed, at this initial stage, it seems unnecessary to know the details of how the District will achieve its stated goal.
Based upon our foregoing discussion, we conclude that there remains a question of fact as to the lawfulness of the manner in which the District planned to achieve its stated goal. Moreover, we observe that this early stage in the process, that is, adding a purpose, does not appear to be an appropriate time for a thorough analysis of the methods to be employed by the District in effectuating the Purpose and in attaining its stated goal.[14] Rather, such an analysis is more appropriate at the ratemaking stage. At this stage in the process, the trial court, upon the filing of objections, was to determine the sufficiency of the petition and the necessity and feasibility of adding the Purpose.[15] Having concluded that there remain questions of fact as to the lawfulness or unlawfulness of the manner in which the District plans to achieve its stated goal and that at this point in the proceedings, such a determination is premature, summary judgment was improperly granted in favor of the Town.
The judgment of the trial court is reversed, and this cause is remanded for further proceedings.
BAKER, C.J., and CRONE, J., concur.
NOTES
[1] A conservancy district may only provide services in accordance with the purpose or purposes for which it is established. The nine "purposes" for which a conservancy districts may be established are set forth in Indiana Code Ann. § 14-33-1-1 (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007). The procedure for adding a "purpose" to an established district is set forth in Ind. Code Ann. § 14-33-1-4 (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007).
[2] The District indicated that it was not interested in supplying retail water services to its sewage service customers.
[3] For purposes of I.C. 14-33, a "freeholder" is "a person who holds land: (1) in fee; (2) for life; or (3) for some indeterminate period of time; whether or not in joint title with at least one (1) other person." Ind. Code Ann. § 14-8-2-104 (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007).
[4] In a newspaper article, the District made a similar statement with regard to the possibility that addition of the Purpose could have the effect of lowering or sustaining rates for the District's sewage service customers.
[5] The Town, being a municipality and landowner in the District's territory, sought to intervene as a matter of right pursuant to Ind. Trial Rule 24(A).
[6] In support of its position, the IURC provided citations to several IURC opinions and decisions.
[7] The trial court did not rule on either party's motion to strike.
[8] A trial court's determination as to the sufficiency of the Petition would seem to entail consideration of whether the petition met the statutory requirements for form, content, required number of signatures, etc. as set forth in I.C. § 14-33-1-4 and I.C. § 14-33-2-4 (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007). It does not appear that the lawfulness of the stated goal or the manner in which the District hoped to achieve its goal would impact a determination as to the sufficiency of the Petition. To the extent the Town agues that the freeholders who signed the Petition were fraudulently induced to do so, the Town designated no evidence to support its claim.
[9] The lawfulness or unlawfulness of the District's objective to possibly lower or sustain rates for sewage service customers is not a factor to be considered in determining the necessity of expanding the District's purpose to include water supply and related services.
[10] The determination as to feasibility of the District's request to add a purpose may be impacted by the lawfulness or unlawfulness of the method employed by the District in achieving its stated goal. Feasibility of adding the purpose concerns whether adding such purpose is capable of being done. As we discuss, infra, there remain genuine issues of material fact as to whether the District's stated goal or the method it will employ to achieve such goal is unlawful. Indeed, at this point in the process for adding a purpose, such a determination is premature.
[11] As required by Indiana Code Ann. § 8-1-2-4 and § 8-1.5-3-8 (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007), rates and charges of all utilities are required to be just and reasonable. Indiana Code § 14-33-20-13 (West, PREMISE through 2007 Public Laws approved and effective through April 8, 2007) specifically requires conservancy districts that operate water utilities to charge just and reasonable rates. Unreasonable or unjust charges for services are unlawful. Id. That same statute defines a reasonable and just charge:

(a) . . . A reasonable and just charge for services is a charge that produces sufficient revenue to pay all the legal and other necessary expenses incident to the operation of the water facilities:
(1) including maintenance costs, operating charges, upkeep, repairs, and interest charges on bonds, notes, or other evidences of indebtedness;
(2) providing a sinking fund for the liquidation of bonds, notes, or other evidence of indebtedness;
(3) providing adequate money to be used as working capital, as well as money for making extensions and replacements; and
(4) paying taxes, if any, that are assessed against the water facilities.
(b) The rates may include a reasonable profit on the investment, so that the charges produce an income sufficient to maintain the water facilities in a sound physical and financial condition to provide adequate and efficient service. A rate too low to meet these requirements is unlawful.
Id. Thus, the District clearly could not have charged higher rates for water services in order to generate enough revenue to subsidize its rates for its sewer customers. Charging a higher rate for water services for such purpose would be unreasonable and unjust.
[12] The trial court also relied upon the opinion of the State Board of Accounts which, consistent with the position of the IURC, provided that subsidization of one utility by another is not permissible.
[13] The IURC's amicus ruling was therefore not, as the Town represented to the trial court, a "dispositive ruling." Appendix at 385. Nor can it be said that the IURC responded by "emphatically finding that [the District's] proposal is illegal" or that the IURC "specifically determined that [the District's petition] violates Indiana law." Id. at 407, 413.
[14] In fact, we note that the District informed its freeholders during the petition drive that further research would need to be done as adding the purpose was only the first step.
[15] As noted above, the trial court made no specific findings with regard to the sufficiency of the petition or the necessity or feasibility of adding the Purpose. See footnotes 8, 9, and 10, supra.