**The TOWN OF AVON, Indiana,**
**Appellant–Defendant,**

v.

**WEST CENTRAL CONSERVANCY DISTRICT, Washington Township, and Ronnie Austin, in his official Capacity as Trustee and Park Governor, Appellees–Plaintiffs.**

**No. 32A05–1003–PL–149.**

Court of Appeals of Indiana.

Nov. 12, 2010.

---

J. Christopher Janak, Paul D. Vink, Stephen C. Unger, Bose McKinney & Evans LLP, Indianapolis, IN, Daniel L. Taylor, Kirtleiy, Taylor, Sims, Chadd, & Minnette, PC, Lebanon, IN, Attorneys for Appellant.

Bette J. Dodd, Joseph P. Rompala, Lewis & Kappes, P.C., Jo Angela Woods, Indianapolis, IN, Attorneys for Amici Curiae The Indiana Association of Cities and Towns and The Indiana Municipal Lawyers Association.

Mark J. Crandley, Nicholas K. Kile, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellees Washington Township and Ronnie Austin.

Alan M. Hux, Gayle A. Reindl, John D. Papageorge, Taft Stettinius & Hollister, LLP, Indianapolis, IN, Attorneys for Appellee West Central Conservancy District.

## OPINION

BAKER, Chief Judge.

The Town of Avon (Avon) enacted an ordinance that purports to regulate a township and a conservancy district's ability to remove and sell groundwater that was located in a local park. The conservancy district and the township challenged the Ordinance's validity under the Home Rule Act,[1] alleging that Avon's control over the groundwater exceeded its scope of its authority. On the other hand, Avon asserted that it had the statutory authority to regulate the withdrawal of the water. The trial court declared the Ordinance invalid on several bases and this appeal ensues.

Appellant-defendant Avon appeals the trial court's grant of summary judgment in favor of appellees-plaintiffs West Central Conservancy District (WCCD) and Washington Township (Township) (collectively, Appellees), which determined that a town ordinance could not govern the Township and WCCD's power to remove and sell groundwater that was located in a town park. Avon challenges the trial court's determination that the ordinance violated the Home Rule Act and contends that there is nothing in the ordinance that encroaches on the powers that are expressly granted to the Indiana Department of Natural Resources (DNR) regarding the regulation of ground water, and that the ordinance does not deprive the appellees from using the water as they desire. Concluding that the trial court properly entered summary judgment in the appellees' favor, we affirm.

1. Ind.Code § 36–1–3–1 et seq.

## FACTS [2]

The Township owns and maintains Community Park (Park) in Avon. A stream known as White Lick Creek runs along and through the Park. At some point, Township representatives discussed the sale of groundwater in the Park with at least two potential purchasers. The Township believed that the sale of the water would benefit the community that the Township serves. Additionally, a geologist working for Avon believed that the valley around White Lick Creek was the most likely source for a high capacity water well service for the town.

The WCCD was established in 1992 pursuant to Indiana Code section 14–33–1–1 *et seq.*, to provide for the collection, treatment, and disposal of sewage and other liquid wastes. The WCCD, whose main office is in Avon, owns approximately 100 acres of land within the town or within ten miles of the town's municipal limits. A study commissioned by the WCCD concluded that the White Lick Creek area was a potential source for groundwater and wells. At some point, it was discovered that water aquifers [3] were located beneath the WCCD's land, and the water could be leased or sold to a third party.

Beginning in July 2005, the WCCD commenced a petition drive in an effort to establish its plan to provide a water supply. However, on April 24, 2008, Avon enacted an "Ordinance Exercising Power to Control and Regulate Taking of Water from a Watercourse" (Ordinance). Appellant's App. p. 480.[4] The Ordinance was purportedly enacted in accordance with Avon's power to "establish, vacate, maintain, and control watercourses" under Indiana Code section 36–9–2–8, and to "regulate the taking of water, or causing or permitting water to escape, from a watercourse" under Indiana Code section 36–9–2–10.

The Ordinance provided Avon with the exclusive right to "establish, maintain, control and regulate the taking of water within ten ... miles of the Town's municipal limits." *Id.* Moreover, the Ordinance stated that "[n]o water shall be taken or caused or permitted to escape from a watercourse to be used for retail, wholesale, or other mass distribution of water, unless such distribution is conducted by or on behalf of the Town pursuant to authority exercised under Ordinance 2005–39."

Pursuant to the Ordinance, a "watercourse" that is subject to Avon's control includes "lakes, rivers, streams, groundwater, aquifiers, and/or any other body of water whether above or below ground." *Id.* The Ordinance also states that Avon can exercise control over these "watercourses" in accordance with Indiana Code section 36–9–2–10, which defines watercourses to include "lakes, rivers, streams

2. We heard oral argument in this case on October 20, 2010, in Indianapolis. We commend counsel for their outstanding oral advocacy and written presentations in this matter.

3. Indiana Code section 14–25–7–1 defines "aquifer" as "an underground geologic formation that ... has the ability to receive, store, and transmit water in amounts sufficient for the satisfaction of any beneficial use."

4. Prior to the enactment of this ordinance, the Avon Town Council enacted an ordinance in 2005 to exercise its power "to provide water service in and around the Town." Appellant's App. p. 410–11. Thereafter, Avon filed an opposition in the Hendricks Circuit Court to the WCCD's petition to add a water supply to its purposes. Although the trial court granted Avon's motion for summary judgment, we subsequently reversed that order in an unpublished memorandum decision. *W. Cent. Conservancy Dist. v. Town of Avon*, No. 32A04–0610–CV–580, 2007 WL 3012860 (Ind.Ct.App. Oct. 17, 2007).

and any other body of water." However, the statute does not mention "groundwater," "aquifers" or any water that is "below ground."

Township representatives consulted an engineer about what additional studies should be made regarding the water under the Park. The engineer recommended digging a number of test wells and issued a proposal after the Ordinance was in place and prevented any sale of water. The proposal included an estimate of $92,000 for his work. In response, Avon asserted that the drilling of test wells would violate the Ordinance and it threatened enforcement proceedings against the Township. As a result, the Township took no further action on the project.

On October 23, 2008, the Township filed a complaint for a permanent injunction and declaratory judgment, seeking to have the Ordinance declared invalid under various provisions of the Home Rule Act. The Township claimed, among other things, that the Ordinance impermissibly redefines the term "watercourse" because it does not include groundwater, the Ordinance violated the Home Rule Act because only State agencies can regulate surface and groundwater under the relevant statutes, and the Ordinance seeks to regulate groundwater outside of Avon's territorial jurisdiction. Thus, the Township claimed that the Ordinance's attempt to grant Avon control over the park water exceeded the scope of Avon's authority. The WCCD also filed a complaint on December 3, 2008, challenging the Ordinance's validity under the Home Rule Act.

Thereafter, all parties filed motions for summary judgment. The Township claimed that it was entitled to judgment as a matter of law because the Ordinance purported to grant Avon powers in contravention of the Home Rule Act. Moreover, the Township asserted that the statutes make it clear that the State is the sole regulator of the use of groundwater and wells.

WCCD claimed that it was entitled to summary judgment because the Ordinance violates the Home Rule Act for improperly imposing duties on it and regulating ground water. WCCD argued that the DNR is the sole regulator of these areas and that it was deprived of the common law property right to the groundwater in the aquifers and its right to produce and use the water as it desires.

On the other hand, Avon asserted in its motion for summary judgment that the Ordinance is valid because it permits "reasonable withdrawals of groundwater," and it has the statutory authority to regulate the withdrawal of water from a watercourse. Appellant's App. p. 444. Moreover, Avon contends that the DNR's power to regulate groundwater does not preclude it from also doing so because a property owner's right to use and profit from his property is always subject to reasonable governmental regulation. In short, Avon asserted that it has "followed the letter of the law and its Ordinance does not violate the [Home Rule Act]." *Id.* at 469.

Following arguments on the motions on January 8, 2008, the trial court granted summary judgment in favor of the Township and the WCCD. In 58 findings of fact and nearly 100 conclusions of law, the trial court observed that the Home Rule Act prohibits a municipality from regulating conduct that is regulated by a state agency, and the General Assembly has expressly delegated to the Township the right to sell the Park's property, including water. Thus, under the statutes governing township-owned parks, the Township—through its trustee acting as the "Park Governor"—has the right to sell water on the Park's property. *Id.* at 12. The trial court also found that the Township has the

power to decide whether and when to sell groundwater under the Park. Thus, because the Home Rule Act affords the Township the right to sell the park water, Avon may not exercise that right.

The trial court further concluded that

22. Pursuant to Ind.Code § 36–9–2–10, the Watercourse Statute, a local government "may regulate the taking of water, or causing or permitting water to escape, from a watercourse."

23. The term "watercourse" includes "lakes, rivers, streams, and any other body of water." Ind.Code § 36–9–1–10.

. . .

25. Even if the Watercourse Statute somehow gives Avon control over "bodies of water" within the Township's jurisdiction, the Watercourse Statute cannot be read as giving Avon regulatory authority over aquifers, wells or ground water.

26. Instead of a broad scope covering all water wherever it is found, the limited term "body of water" is modified by the term "other," meaning that the General Assembly intended "body of water" to revert to those more specific categories that preceded it." [Citation omitted].

27. This language limits the scope of the Watercourse Statute to bodies of water that are similar to lakes, rivers and streams. It does not extend the scope of the statute to any and all "water" found within Avon's town limits.

28. The Ordinance itself, while specifically citing to Ind.Code § 36–9–2–10, defines the watercourses subject to Avon's control to include "lakes, rivers streams, groundwater, aquifers, and/or any other body of water whether above or below ground."

. . .

43. The Review of Powers Subsection of the Home Rule Act states that Avon can "review or regulate the exercise of powers by a unit only to the extent prescribed by statute." Ind.Code § 36–1–3–7.

44. An entity "regulates" under the Home Rule Act when it purports to "license, inspect, or prohibit" conduct by another government entity. Ind.Code § 36–1–2–15.

. . .

47. Avon's ability to permit or deny a request by the Township to sell its water is precisely the type of regulation or review of government power that is prohibited by the Review of Powers Subsection of the Home Rule Act. Avon's Town Manager testified in his deposition that the purpose of the Ordinance was "to regulate how water is withdrawn and provided to residents of Avon" and "to make sure that we were the ones deciding, the town was exercising its home rule authority to regulate the withdrawal of water from its community."

48. This type of regulation "by another government entity" is what is expressly precluded by the Review of Powers Subsection. The only way Avon can regulate or review the Township's exercise of its powers under the Park Resource Statute is if the General Assembly expressly gave it that right. Ind.Code § 36–1–3–7. No language in the Indiana Code purports to say that Avon has a right to oversee how the Township exercises its power under the Park Resource Statute.

*Id.* at 27. The trial court then concluded that the Ordinance is invalid pursuant to the Review of Powers Subsection of the Home Rule Act.

The trial court also determined that the Ordinance is invalid under the "duties section of the Home Rule Act." *Id.* More particularly, the trial court found that the Ordinance improperly restricts the Town-

ship from exercising its statutory powers under the Park Resource Statute and obligates the Township to obtain Avon's approval before selling water. Thus, because the legislature provided the Township with the express authority to sell the Park's water, Avon cannot place duties on the Township as to how it carries out that express statutory power.

The trial court next cited Indiana Code section 36–1–3–8(a)(7), which prohibits a town from regulating conduct that is regulated by a state agency, except as expressly granted by statute. And, in accordance with Indiana Code section 36–1–2–15, a municipality "regulates" conduct under the Home Rule Act when an ordinance purports to "license, inspect, or prohibit that conduct." As a result, the trial court concluded that

> 62. This requirement renders the Ordinance void because the state already regulates the taking of ground water and the operation of wells.
>
> 63. The ... DNR ... has the statutory authority to regulate ground water. *See* Ind.Code §§ 14–25–3–1 et seq.

*Id.* at 29. The trial court observed that Indiana Code section 14–25–3–4 provides that if a property owner in a restricted use area wants to withdraw more than a certain amount of groundwater, he must obtain a permit from the DNR. Moreover, the trial court determined that the legislature gave the DNR the right to intervene to reduce the amount of water taken from aquifers or wells even when an owner is allowed to take water. As a result, it was held that the Ordinance directly intrudes on this regulatory system by purporting to allow Avon to decide what wells can be put in place and how groundwater can be used. Moreover:

> 71. The Home Rule Act does not require a statute or agency to expressly say that it has "preempted the field" in

order to prevent local regulation on a topic.

> 72. The Ordinance's limitation on the Township's right to sell water is not consistent with the purpose of the DNR's regulation of ground water.

> . . .

> 75. As applied to the water in WCCD's aquifers, Ordinance 2008–08 violates Indiana's Home Rule Act:
>
> (a) The Ordinance violates Indiana Code § 36–1–3–8(a)(3) because the Ordinance imposes duties on WCCD, which is a political subdivision, and no statute expressly grants Avon authority to regulate ground water in aquifers;
>
> (b) The Ordinance violates Indiana Code § 36–1–3–8(a)(7) because the Ordinance regulates ground water, which is regulated by the [DNR], a state agency, and no statute expressly grants Avon authority to regulate ground water in aquifers; and
>
> (c) The Ordinance violates Indiana Code § 36–1–3–5(a)(2) because the Ordinance encroaches on the power to regulate ground water, which the Indiana legislature expressly granted to the [DNR].

*Id.* at 30, 31. Avon now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Heyser v. Noble Roman's Inc.,* 933 N.E.2d 16, 18 (Ind.Ct. App.2010). All facts and reasonable inferences drawn from those facts are con-

strued in favor of the nonmovant. *Id.* The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Bellows v. Bd. Of Comm'rs of Cnty. of Elkhart,* 926 N.E.2d 96, 113–14 (Ind.Ct. App.2010). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. *Id.*

We also note that the trial court ruled on cross-motions for summary judgment in this case. Thus, the inquiry remains the same. And where the parties do not dispute the facts material to the claim, our task on appeal is to determine whether the trial court correctly applied the law to the undisputed facts. *Taylor v. Fall Creek Reg'l Waste Dist.,* 700 N.E.2d 1179, 1184 (Ind.Ct.App.1998). We will affirm the grant of summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Id.*

Finally, we do not owe deference to the findings and conclusions entered by the trial court in a summary judgment order. *Trans–Care, Inc. v. Comm'rs of Cnty. of Vermillion,* 831 N.E.2d 1255, 1258 (Ind.Ct. App.2005). Although such findings and conclusions may assist our review, we will affirm if the trial court's grant of summary judgment can be sustained on any theory or basis in the record. *Beck v. City of Evansville,* 842 N.E.2d 856, 860 (Ind.Ct. App.2006).

## II. Avon's Claims [5]

### A. Authority to Regulate in Accordance with "Water Course" Definitions

■ Avon argues that the trial court erred in concluding that the Ordinance prohibits it from regulating the sale of groundwater under the Park because the intent of that legislation is to permit it to "regulate the withdrawal of groundwater for the health, safety, and welfare of its citizenry." Appellant's Br. p. 2. Put another way, Avon asserts that the relevant statutes permit it to regulate the water because "groundwater is a watercourse or body of water" within the meaning of the statutes. *Id.* at 6.

Indiana Code section 36–1–2–23 defines a "unit" as a "county, municipality, or township" and Indiana Code section 36–9–2–10 unambiguously states: "A unit may regulate the taking of water, or causing or permitting water to escape, from a watercourse." And in accordance with Indiana Code section 36–9–2–8, a "unit may establish, vacate, maintain, and control watercourses." A watercourse "includes lakes, rivers, streams, and any other body of water." I.C. § 36–9–1–10.

Indiana Code section 36–9–2–11 states that a unit may "regulate conduct that ... affect[s] the flow of water [ ] in a watercourse." A municipality such as Avon "may exercise powers granted by sections 9, 10, 11, 12, and 13 of this chapter in areas within ten (10) miles outside of its corporate boundaries." Ind.Code § 36–9–2–19.

In light of these statutes, Avon maintains that it is authorized to regulate

---

5. The Indiana Association of Cites & Towns (Association) appears as amicus curiae in this case. In its brief, the Association asserts in its "Statement of Interest" that the trial court's grant of summary judgment must be reversed because of the "negative impact on Indiana cities and towns, and, for municipal lawyers, as to their clients." Amici Br. p. 1.

But for the contention that the legislature has intended to subordinate the power of townships to the authority of larger local units in which they are located, the Association's arguments are similar to and mirror those of Avon's. Thus, we address both Avon's and the Association's claims in the same section.

watercourses (including controlling the withdrawal of water) within its corporate boundaries or ten miles beyond. Moreover, Avon points out that Indiana Code section 36–8–2–7 authorizes a "[a] unit [to] ... regulate any business use of a watercourse." Because the appellees desire to withdraw groundwater for the purpose of selling it to generate revenue, Avon maintains that such is undoubtedly a "business use" that falls within the ambit of Indiana Code section 36–8–2–7.

We agree with Avon's assertion that because it can regulate watercourses, a critical question before us is whether an aquifer is a "watercourse" under Indiana law. In 2009, the legislature amended Indiana Code section 36–5–2–10, which provides that when a town adopted, amended or repealed an "environmental restrictive ordinance," the town was required to report the action and the content of the ordinance to the Indiana Department of Environmental Management (IDEM). In light of this change, Avon asserts that the General Assembly reaffirmed the notion that counties, cities, and towns have the authority to limit, regulate, or prohibit the withdrawal of groundwater.

However, we note that when construing a statute

> We presume that the legislature is aware of the common law, and it is a rule of statutory construction that the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication.

*S. Haven Sewer Works, Inc. v. Jones*, 757 N.E.2d 1041, 1047 (Ind.Ct.App.2001). That said, Indiana common law has observed that a watercourse exists where:

> "Water begins to flow in a definite direction and there is a regular channel formed with well defined banks and bottom and water flows therein, not necessarily continually but from time immemorial and for a substantial period of each year." ... The essential characteristics of a watercourse ... are substantial existence and unity, regularity, and dependability of flow along a definite course.

*Long v. IVC Indus. Coatings, Inc.*, 908 N.E.2d 697, 703 (Ind.Ct.App.2009) (quoting *Lowe v. Loge Realty Co.*, 138 Ind.App. 434, 436, 214 N.E.2d 400, 402 (1966)); *see also Birdwell v. Moore*, 439 N.E.2d 718, 721 (Ind.Ct.App.1982) (observing that where there was a dispute over surface water that drained from one farm to another, it was determined that "[t]he common law definition of 'watercourse' did not extend to what is commonly called ground water or aquifers").

Although Avon contends that "watercourse" means "each," "every," and "all" bodies of water, wherever located in accordance with Indiana Code section 36–9–2–10, we note that Indiana Code section 36–9–2–11 specifically refers to a watercourse as having a "flow." Moreover, Indiana Code section 36–9–2–9 states that a "unit may change the channel of, dam, dredge, remove an obstruction in, straighten, and widen a watercourse." And in *Wiggins v. Brazil Coal & Clay Corp.*, 452 N.E.2d 958, 962–63 (Ind.1983), our Supreme Court described groundwater as "lost water that percolates the soil below the surface of the earth, in hidden recesses, without a known channel or course[,]" and differentiated such underground water "moving through natural and artificial fissures and orifices" from a watercourse. (Quoting *Taylor, Admr. v. Fickas*, 64 Ind. 167, 172 (1878)).

Thus, contrary to Avon's assertions, because the underground water at issue here that is percolating through an aquifer does not have well-defined banks, a bottom, a channel, or a flow along a definite course,

it is not a watercourse. More particularly, the Park's aquifers and groundwater are not lakes, rivers, or streams, and the definition of "watercourse" in Indiana Code section 36–9–1–10 necessarily includes only bodies of water like lakes, rivers, and streams. Indeed, the General Assembly would have simply used the term "water" or even "aquifers" or "groundwater" in the Watercourse Statutes if it intended such a broad sweep. Therefore, we reject Avon's contention that it has the express statutory authority to regulate ground water in an aquifer.

We also note that Avon's reliance on the 2009 version of Indiana Code section 36–1–2–4.7 and Indiana Code section 36–5–2–10 is misplaced because neither statute expressly authorizes a town to regulate groundwater in an aquifer. In fact, the statutes make no mention of watercourses. Indiana Code section 36–1–2–4.7 is a definition of an "environmental restrictive ordinance," and Indiana Code section 36–5–2–10 is a procedural statute, which provides that if a town passes an environmentally restrictive ordinance, it must give notice to IDEM for its review. If towns had a long-standing right to regulate aquifers under the Watercourse Statutes, the 2009 versions would have simply required the town to report an ordinance regulating withdrawals from "watercourses." Instead, the statutes refer to "groundwater," again demonstrating that the General Assembly does not intend a "watercourse" to include aquifers or wells. In short, these statutes do not suggest that Avon has the power to promulgate an ordinance that regulates withdrawals of water by a governmental entity.

The Home Rule Act, which is discussed in more detail below, makes it clear that Avon may not impose a duty on the appellees "except as expressly granted by statute." Ind.Code § 36–1–3–8(a)(3).

Therefore, because an aquifer is not a watercourse, Avon has no authority to restrict what the appellees choose to do with the groundwater in the aquifers.

### B. Challenges Under the Home Rule Act

#### 1. Inherent Power

■ Notwithstanding our conclusion that groundwater in an aquifer does not include a watercourse under the statutes, Avon contends that it has the statutory authority to control the depletion of its water supply because that power is consistent with its inherent police power authority that is embodied in the Home Rule Act. Avon asserts that the Ordinance reflects a legitimate need to limit the withdrawal of groundwater for the protection of the health, safety, and welfare of its residents. Therefore, Avon argues that Indiana Code section 36–5–2–10 and Indiana Code section 36–1–2–4.7 permit the regulation of the withdrawal of groundwater and the Ordinance is a valid exercise of that power.

Avon directs us to our Supreme Court's decision in *City of Crown Point v. Lake County*, 510 N.E.2d 684 (Ind.1987), wherein Lake County sought to convert a residence it owned into a building that could house fifteen class D felons. *Id.* at 685. The proposed use was not permitted in an R–1 zoning district, and the city—Crown Point—sought an injunction to enforce its zoning ordinance against the county. The County argued that under Indiana Code section 36–1–3–8, Crown Point could not force it to be subject to its zoning regulations. *Id.*

Our Supreme Court determined that the "Home Rule Act does not bar units from enforcing against other political subdivisions those regulations of general applicability which are specifically authorized by statute." *Id.* at 686. The *Crown Point* Court also pointed out that the terms "spe-

cifically authorized by statute" merely meant that there was some general grant of authority to regulate, such as the general zoning authority granted to units in Title 36. *Id.*

Under this rationale, Avon contends that the trial court's finding that the Ordinance violates the Home Rule Act because it improperly imposes duties on WCCD and the Township directly contravenes the *Crown Point* holding. In other words, Avon's right to regulate and protect its water supply arises from its statutory authority to regulate watercourses. Thus, Avon maintains that the trial court erred in concluding that Indiana Code section 36–1–3–8(a)(3) prevented it from imposing any additional obligations on other political subdivisions.

As noted above, we have concluded that the water in the aquifers are not watercourses within the meaning of the statutes. Additionally, we note that the *Crown Point* Court also observed that the "Home Rule Act does not bar units from enforcing against other political subdivisions those regulations of general applicability *which are specifically authorized by statute.*" 510 N.E.2d at 686 (emphasis added).

Unlike the circumstances in *Crown Point,* there is no statute expressly authorizing a town to regulate the withdrawal of groundwater from aquifers. Although Indiana Code section 36–1–3–4(b)(2) of the Home Rule Act provides that a municipality may exercise powers that are not specifically granted by statute, Indiana Code section 36–1–3–8(a)(3) provides that a town may not impose *duties* on another political subdivision "except as expressly granted by statute." Therefore, we must conclude that because no statute expressly grants a municipality the authority to regulate groundwater in aquifers, the Ordinance is invalid as applied to groundwater. As a result, Avon's challenge on this basis also fails.

### 2. Regulation or Review of the Township's Exercise of Powers

In a related issue, Avon asserts that the Township's statutory authority to sell or lease natural resources on its property can be reconciled with its authority to regulate groundwater. For instance, Avon points out that while the Park Governor's authority under Indiana Code section 36–10–7.5–7 (Park Resources Statute) is valid, it nonetheless is subject to reasonable regulation by another governmental entity. Avon points out that Indiana Code section 36–10–7.5–7 provides the Township with the authority to "[s]ell, lease, or enter into a royalty contract for the natural ... resources of park land" and to "[a]cquire and dispose of real and personal property." However, Avon also directs us to Indiana Code section 36–1–3–7, which purportedly grants it the right to "review or regulate the exercise of powers by a unit." In this context, "regulate" means to "license, inspect, or prohibit." I.C. § 36–1–2–15. In essence, Avon suggests that it has the right to say yes or no to the Township's exercise of its powers, by licensing—or even prohibiting—the Township's exercise of its own statutory powers.

As set forth above, and contrary to Avon's contention, it is clear that the Park Resources Statute specifically states that the Township may decide what to do with the Park's water. Moreover, the Watercourse statutes are silent with regard to a review of the Township's powers, and, as we have concluded above, they do not apply to the water at issue in this case. Therefore, Avon does not have the right to "review or regulate the exercise of powers" by the Township. I.C. § 36–1–3–7.

Moreover, Avon lacks the authority to impose duties on the Township. Our re-

view of the Ordinance reflects that the Township must refrain from exercising its statutory powers under the Park Resources Statute. Moreover, the Township has a duty to obtain Avon's approval before it sells the water. As the trial court found, "Avon's Ordinance prohibits the Township from exercising its authority under the Park Resource statute and licensing the sale of water by requiring the Township to obtain a permit before selling its groundwater." Appellant's App. p. 26.

Notwithstanding Avon's claim that imposing such duties are permissible because the Ordinance is generally applicable to all residents and not merely limited to the Township, the *Crown Point* Court made it clear that a unit can only impose duties under "regulations of general applicability which are specifically authorized by statute." *Crown Point*, 510 N.E.2d at 686. Again, Avon has no express statutory authority for its attempt to regulate the Township's aquifers. As a result, Avon's claim on this basis fails.

### 3. Preemption

In its next argument, Avon maintains that the trial court erroneously concluded that the Ordinance violated yet another provision of the Home Rule Act, which states that "[a] unit does not have the following: ... (7) The power to regulate conduct that is regulated by a state agency, except as expressly granted by statute." I.C. § 36–1–3–8(a)(7).

Notwithstanding Avon's contention, our courts have repeatedly held that local ordinances impermissibly intrude on state regulatory systems where they prohibit conduct authorized by the state, particularly where the conduct is permitted under a license or permit. *See, e.g., Ind. Dep't of Natural Res. v. Newton Cnty.*, 802 N.E.2d 430, 432 (Ind.2004) (recognizing that the Home Rule Act prohibits a local government from imposing "duties on activities

regulated by a state agency"); *Hopkins v. Tipton Cnty. Health Dep't*, 769 N.E.2d 604, 608 (Ind.Ct.App.2002) (holding that a county ordinance on the licensure of septic system installers was invalid and could not be enforced because the Indiana State Board of Health has the statutory authority to regulate septic systems).

In accordance with Indiana Code section 14–25–3–1 *et seq.*, the DNR possesses "expansive authority" to regulate groundwater, such as assessing the availability of water resources; taking and maintaining an inventory of significant uses of water withdrawn from the surface or ground; and planning for the development, conservation, and use of water resources for beneficial uses. Moreover, the Natural Resources Commission maintains a statewide inventory of the water resources within the state, including the "capabilities [of] ... aquifers to support withdrawal uses" and "[p]otential sources and amounts of surplus water available for transfers." I.C. § 14–25–7–13. And if a property owner in a restricted use area desires to withdraw more than a certain amount of groundwater, he or she must obtain a permit from the DNR. I.C. § 14–25–3–6.

Indiana Code sections 14–25–3–6 to –15 set forth detailed criteria and requirements for the permitting process, including a right to judicial review. Interestingly, "persons" that must obtain permits from the DNR includes any "governmental agency." I.C. § 14–25–3–1. Finally, the General Assembly has granted the DNR specific authority to regulate the withdrawal of ground water from aquifers. I.C. § 14–25–7–14(D). And there is no statute that expressly authorizes Avon to co-regulate groundwater with the DNR. Thus, because the Ordinance attempts to regulate ground water—a power that is granted exclusively to the DNR—a viola-

tion of Indiana Code section 36–1–3–8(a)(7), and –5 [6] is apparent.

### C. Common Law

■ Finally, in light of our determination that a watercourse does not include an underground aquifers under Indiana law, we must conclude that the Ordinance fails in accordance with the well-established principle that groundwater is the landowner's property. In *Wiggins*, it was recognized that

> Ground water is part of the land in which it is present and belongs to the owner of that land. It may be put to use to the fullest extent to further enjoyment of the land, however this right does not extend to causing injury gratuitously or maliciously to nearby lands and their owners.

452 N.E.2d at 964. While we embrace the notion that the State may regulate groundwater through the DNR, Avon may not interfere with the common law right to use the groundwater in its aquifers as it sees fit where the State has not imposed such a regulation. *See* 312 I.A.C. § 13–2–6 (recognizing that landowners should be free to use groundwater so long as they submit certain data to the State). To hold otherwise would result in Avon's ability to fundamentally rewrite the DNR's statutory powers.

### CONCLUSION

In light of our discussion above, we conclude that the trial court properly granted summary judgment in the appellees' favor and declared the Ordinance invalid. In particular, Avon lacks the express authority to regulate groundwater in aquifers un-

der the Watercourse Statutes, the Home Rule Act does not grant Avon the authority to regulate in accordance with its inherent police powers, and Avon lacks the authority to review, regulate, or impose duties on the appellees' exercise of its power to sell the groundwater under the Park Resources Statute. Moreover, the Ordinance's limitation on the appellees' right to sell water is inconsistent with the DNR's regulation of groundwater and there is no statute expressly authorizing Avon to regulate the appellees' sale of the groundwater. Thus, Avon may not interfere with the appellees' common law right to use the groundwater in its aquifers as it sees fit.

The judgment of the trial court is affirmed.

NAJAM, J., and MATHIAS, J., concur.

---

**6.** Indiana Code section 36–1–3–5 provides that

(a) Except as provided in subsection (b), a unit may exercise any power it has to the extent that the power:

(1) is not expressly denied by the Indiana Constitution or by statute; and

(2) is not expressly granted to another entity.

(b) A township may not exercise power the township has if another unit in which all or

part of the township is located exercises that same power.