## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 30 2015, 10:31 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Jody M. Butts
Megan M. McCooe
McNeely Stephenson
Shelbyville, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Louis Ridgeway, <br> *Appellant-Defendant,* <br><br> v. <br><br> Richard Jacobs, <br> *Appellee-Plaintiff* | March 30, 2015 <br><br> Court of Appeals Case No. <br> 67A04-1409-SC-410 <br><br> Appeal from the Putnam Superior Court <br><br> The Honorable Charles D. Bridges, Judge <br><br> Case No. 67D01-1310-SC-556 |

**Vaidik, Chief Judge.**

## Case Summary

[1] Richard Jacobs sued Louis Ridgeway in small-claims court alleging that water run-off from Ridgeway's property damaged his driveway, making it unpassable. The small-claims court found in favor of Jacobs and awarded him $4500 in

damages. Ridgeway now appeals, arguing that the common-enemy doctrine applies.

[2] According to the common-enemy doctrine, surface water that does not flow in defined channels is a common enemy, and each landowner may deal with it in such a manner as best suits his own convenience. Here, the evidence presented at trial was that the "run-off" was surface water, which is subject to the common-enemy doctrine. That is, the evidence showed that the water flowed over several locations on Jacobs' property—and not in a defined channel. According to the common-enemy doctrine, this is not actionable. We therefore reverse the small-claims court's judgment in favor of Jacobs.

# Facts and Procedural History

[3] Ridgeway owns 103 acres of land on West County Road 350 North in Putnam County, Indiana, and has farmed it for forty years. Jacobs' property abuts Ridgeway's property on the west. Jacobs purchased his property in 1998 and last lived there in 2009 or 2010. It is undisputed that "run-off" from Ridgeway's crop field has damaged Jacobs' .25-mile-long driveway, creating a very large ditch that has made Jacobs' driveway unpassable. *See* Appellant's App. p. 9. As a result, Jacobs cannot reach his house by car.

[4] In October 2013 Jacobs, pro se, filed a notice of claim in small-claims court. Jacobs alleged "water damage to driveway" because Ridgeway's "run off of

water did away with my driveway." *Id.* at 11. He sought $4500 in damages, plus interest and costs. *Id.*

[5] The small-claims trial was held in March 2014. Ridgeway was represented by counsel. Jacobs testified that Ridgeway was "negligen[t]" because he had done "nothing" to stop the water from coming onto Jacobs' property; Jacobs alleged that instead Ridgeway was required to do "conservation work" on his property to stop the water from coming onto Jacobs' property. Tr. p. 6, 17, 21, 34; *see also id.* at 6 ("I've got pictures here that show the erosion of [Ridgeway's] field and how it runs *down* directly on to my property. . . . It's like a flash flood, it's that fast." (emphasis added)). Jacobs admitted into evidence photographs of Ridgeway's field showing the erosion. Ex. 1 (three photos). Jacobs also admitted into evidence a letter from a conservationist at the United States Department of Agriculture who visited his and Ridgeway's properties. Ex. 2. The conservationist addressed the "washed out crossings that [were] restricting access to [Jacobs'] property" and the "erosion issue" in "the crop field next to [Jacobs'] property." *Id.*

[6] Ridgeway testified about the run-off but said "it's not coming from my farm, it's coming from up above my farm." Tr. p. 35. And he testified that it does so only when it rains two or three inches. *Id.* at 23. Ridgeway explained that he grades and fixes his field each year in order to maintain it and that he started planting wheat in order to slow the water. *Id.* at 35-36. In addition, Ridgeway said he "maintained [the] ravines, ke[pt] them built up, there's been times I went and bought dirt and put dirt in them, to keep the field farmable." *Id.* at 25.

Ridgeway was adamant that he did not make any improvements that would cause any surface water to run onto Jacobs' property, and he said he never collected or disposed of water on Jacobs' property. *Id.*

Finally, Ridgeway explained that about thirty years ago, Putnam County installed drainage systems called "whistles" on the east and north sides of his property. *Id.* at 22. Ridgeway did not request the whistles and had no input in their installation.

In closing, counsel for Ridgeway argued that the common-enemy doctrine applied and therefore Ridgeway was not liable for the damages to Jacobs' driveway. The trial court took the case under advisement and later found in favor of Jacobs. Appellant's App. p. 7. After a damages hearing, the court issued the following order in August 2014:

> 1. The Plaintiff presented credible testimony and a witness as to the damage the run-off from the Defendant's farm field caused to the Plaintiff's driveway.
>
> 2. Said damage is in the form of an approximately 15' wide x 9' deep x 50' long ditch, which transverses the Plaintiff's drive thereby preventing the Plaintiff from gaining access to his residence. Plaintiff's estimate to repair the drive and install a drainage "whistle" is $4500.00.
>
> 3. The Defendant has taken no corrective measures to prevent the run-off damage to Plaintiff's property.
>
> 4. This Judgment is for damages sustained to the Plaintiff's driveway only.

*Id.* at 9. Accordingly, the court ordered Ridgeway to pay Jacobs $4500 plus interest and costs of $94.

[9] Ridgeway now appeals.

# Discussion and Decision

[10] Ridgeway contends that the trial court erred in determining that he was liable for the damage to Jacobs' driveway. Jacobs has not filed an appellee's brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *Id.*

[11] Our standard of review in small-claims cases is well settled. Small-claims-court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This deferential standard of review is particularly important in small-claims actions, where trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting. *Vance v. Lozano*, 981 N.E.2d 554, 557 (Ind. Ct. App. 2012). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Id.* at 557-58.

[12] The parties in small-claims court bear the same burdens of proof as they would in a regular civil action on the same issues. Ind. Small Claims Rule 4(A). It is

incumbent upon the party who bears the burden of proof to demonstrate that it is entitled to the recovery sought. *Vance*, 981 N.E.2d at 558. We consider evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Id.* We will reverse a judgment only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.*

[13] Ridgeway argues that the common-enemy doctrine applies to this case. Water classified as surface water is governed by the common-enemy doctrine:

> In its most simplistic and pure form the rule known as the "common enemy doctrine," declares that surface water which does not flow in defined channels is a common enemy and that each landowner may deal with it in such manner as best suits his own convenience. Such sanctioned dealings include walling it out, walling it in[,] and diverting or accelerating its flow by any means whatever.

[14] *Long v. IVC Indus. Coatings, Inc.*, 908 N.E.2d 697, 702 (Ind. Ct. App. 2009) (quoting *Argyelan v. Haviland*, 435 N.E.2d 973, 976 (Ind. 1982)). However, this rule does not allow a landowner to "collect or concentrate surface water and cast it, in a body, upon his neighbor." *Crowel v. Marshall Cnty. Drainage Bd.*, 971 N.E.2d 638, 649 (Ind. 2012) (quotation omitted).

[15] Under the common-enemy doctrine, it is not unlawful for a landowner to accelerate or increase the flow of surface water by limiting or eliminating ground absorption or changing the grade of the land, even if it causes water to stand in unusual quantities on the adjacent land or to pass into or over the adjacent land in greater quantities or in other directions than the water did before. *Argyelan*, 435 N.E.2d at 976; *Long*, 908 N.E.2d at 702. A landowner

has the right to occupy and improve his land in such manner and for such purposes as he may see fit, including changing the surface or by erecting buildings thereon. *Long*, 908 N.E.2d at 702.

The common-enemy doctrine applies only to surface water, and not to a natural watercourse. *Id.* Surface water is defined as water that is diffused over the natural slope of the ground, not following a defined course or channel. *Ross v. Bartholomew Cnty. Drainage Bd.*, 995 N.E.2d 1051, 1054 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*. Surface water generally originates in rains and melting snows. *Long*, 908 N.E.2d at 703.

Here, the evidence presented at the small-claims trial was that the "run-off" was surface water, which is subject to the common-enemy doctrine. That is, the evidence was that the water flowed over several locations on Jacobs' property—and not in a defined channel. *See id.* ("A natural watercourse is established when surface water begins to flow in a definite direction and there is a regular channel formed with well[-]defined banks and bottom and water flows therein, not necessarily continually but from time immemorial and for a substantial period of each year." (quotation omitted)). For example, Jacobs testified: (1) the water "comes over" his driveway; (2) the water has "eroded my land all the way across my property down into the neighbors"; (3) "all[] this land use[d] to be . . . flat, now it's like a rolley coaster"; and (4) "two (2) more roads down my property" were "also taken out." Tr. p. 6, 9. This testimony shows that the run-off affected several locations on Jacobs' property.

[18]     Moreover, the exception to the common-enemy doctrine does not apply here. There is no evidence that Ridgeway collected or concentrated surface water and then cast it on Jacobs' property.

[19]     According to the common-enemy doctrine, surface water that does not flow in defined channels is a common enemy, and each landowner may deal with it in such manner as best suits his own convenience. What this case boils down to is that Jacobs did not like how Ridgeway dealt with the water issue on his property. But according to the common-enemy doctrine, this is not actionable. *See Crowel*, 971 N.E.2d at 649 ("It is true that under Indiana law, the owner of higher lands is not liable for flooding of lower lands caused by natural surface-water drainage from his or her land."). We therefore reverse the trial court's judgment in favor of Jacobs.

[20]     Reversed.

Kirsch, J., and Bradford, J., concur.